Philo K. HOLLAND and Florence L.
Holland, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 69–1851.

United States District Court,
C. D. California.

March 23, 1970.

Burris & Lagerlof, Los Angeles, Cal.,
and W. H. Jennings, La Mesa, Cal., by
Stanley C. Lagerlof, Los Angeles, Cal.,
for plaintiffs.

Wm. Matthew Byrne, Jr., U. S. Atty.,
Charles H. Magnuson, Asst. U. S. Atty.,
Chief, Tax Division, and Brice A. Tondre,
Asst. U. S. Atty., Los Angeles, Cal., for
defendant.

## DECISION, FINDINGS OF FACT and CONCLUSIONS OF LAW

HAUK, District Judge.

A non-jury trial has been concluded in
this civil action against the United States
of America for the refund of income
taxes allegedly erroneously assessed and
collected by the defendant, United States
of America. The jurisdiction of this
Court was asserted pursuant to Title 26
U.S.C. Section 7422 [1], and Title 28 U.S.C.
Sections 1346(a) (1) and 1402(a) (2).[2]

---

1. Title 26 U.S.C. Section 7422
 **Sec. 7422. Civil Actions for Refund.**
 **(a) No Suit Prior to Filing Claim for**
 **Refund.**—No suit or proceeding shall
 be maintained in any court for the re-
 covery of any internal revenue tax alleged
 to have been erroneously or illegally as-

sessed or collected, or of any penalty
claimed to have been collected without
authority, or of any sum alleged to have
been excessive or in any manner wrong-
fully collected, until a claim for refund

or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

**(b) Protest or Duress.**—Such suit or proceeding may be maintained whether or not such tax, penalty, or sum has been paid under protest or duress.

**(c) Suits Against Collection Officer a Bar.**—A suit against any officer or employee of the United States (or former officer or employee) or his personal representative for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected shall be treated as if the United States had been a party to such suit in applying the doctrine of res judicata in all suits instituted after June 15, 1942 in respect of any internal revenue tax, and in all proceedings in the Tax Court and on review of decisions of the Tax Court where the petition to the Tax Court was filed after such date.

**(d) Credit Treated as Payment.**—The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.

**(e) Stay of Proceedings.**—If the Secretary or his delegate prior to the hearing of a suit brought by a taxpayer in a district court or the Court of Claims for the recovery of any income tax, estate tax, gift tax, or tax imposed by chapter 42, (or any penalty relating to such taxes) mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court or the Court of Claims, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, or intervene in the event of a suit as described in subsection (c) (relating to suits against officers or employees of the United States), within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired. The taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim or intervention of the United States except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax. This subsection shall not apply to a suit by a taxpayer which, prior to the date of enactment of this title, is commenced, instituted, or pending in a district court or the Court of Claims for the recovery of any income tax, estate tax, or gift tax (or any penalty relating to such taxes).

**(f) Limitation on Right of Action for Refund.**—

**(I) General Rule.**—A suit or proceeding referred to in subsection (a) may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative. Such suit or proceeding may be maintained against the United States notwithstanding the provisions of section 2502 of title 28 of the United States Code (relating to aliens' privilege to sue).

**(2) Misjoinder and change of venue.**—for such officer or employee as of the ed States district court against an officer or employee of the United States (or former officer or employee) or his personal representative is improperly brought solely by virtue of paragraph (1), the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer of employee as of the time such action commenced, upon proper service of process on the United States. Such suit or proceeding shall upon request by the United States be transferred to the district or division where it should have been brought if such action initially had been brought against the United States.

**(g) Special Rules for Certain Excise Taxes Imposed by Chapter 42.**—

**(I) Right to bring actions.**—With respect to any act (or failure to act) giving rise to liability under section 4941, 4942, 4943, 4944, or 4945, payment of the full amount of tax imposed under section 4941(a) (relating to initial taxes on self-dealing), section 4942(a) (relating to initial tax on failure to distribute income), section 4943(a) (relating to initial tax on

excess business holdings), section 4944(a) (relating to initial taxes on investments which jeopardize charitable purpose), section 4945(a) (relating to initial taxes on taxable expenditures), section 4941(b) (relating to additional taxes on self-dealing), section 4942(b) (relating to additional tax on failure to distribute income) section 4943(b) (relating to additional tax on excess business holdings), section 4944 (b) (relating to additional taxes on investments which jeopardize charitable purpose), or section 4945(b) (relating to additional taxes on taxable expenditures) shall constitute sufficient payment in order to maintain an action under this section with respect to such act (or failure to act).

**(2) Limitation on suit for refund.—** No suit may be maintained under this section for the credit or refund of any tax imposed under section 4941, 4942, 4943, 4944, or 4945 with respect to any act (or failure to act) giving rise to liability for tax under such sections, unless no other suit has been maintained for credit or refund of, and no petition has been filed in the Tax Court with respect to a deficiency in, any other tax imposed by such sections with respect to such act (or failure to act).

**(3) Final determination of issues.—** For purposes of this section, any suit for the credit or refund of any tax imposed under section 4941, 4942, 4943, 4944, or 4945 with respect to any act (or failure to act) giving rise to liability for tax under such sections, shall constitute a suit to determine all questions with respect to any other tax imposed with respect to such act (or failure to act) under such sections, and failure by the parties to such suit to bring any such question before the Court shall constitute a bar to such question.

**(h) Cross References.—**

**(I) For provisions relating generally to claims for refund or credit, see chapter 65 (relating to abatements, credit, and refund) and chapter 66 (relating to limitations).**

**(2) For duty of United States attorneys to defend suits, see section 507 of Title 28 of the United States Code.**

**(3) For jurisdiction of United States district courts, see section 1346 of Title 28 of the United States Code.**

**(4) For payment by the Treasury of judgments against internal revenue officers or employees, upon certificate of probable cause, see section 2006 of Title 28 of the United States Code.**

2. Title 28 U.S.C. Sections 1346(a) (1) and 1402(a) (2).

**1346. United States as defendant.—** (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

(b) Subject to the provisions of chapter 171 of this title [§§ 2671–2680 of this title], the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(c) The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

(d) The district courts shall not have jurisdiction under this section of any civil action or claim for a pension.

(e) The district courts shall have original jurisdiction of any civil action against the United States provided in section 7426 of the Internal Revenue Code of 1954 [26 § 7426]. (June 25, 1948, c. 646, § 1, 62 Stat. 933; Apr. 25, 1949, c. 92, § 2(a), 63 Stat. 62; May 24, 1949, c. 139, § 80(a), (b), 63 Stat. 101; Oct. 31, 1951, c. 655, § 50(b), 65 Stat. 727; July 30, 1954, c. 648, § 1, 68 Stat. 589; July 7, 1958, P.L. 85–508, §

The matter was originally filed in the District Court for the Southern District of California, and duly and regularly transferred from the District Court of the Southern District of California to the District Court of the Central District of California.

The Court, having heard the testimony, having considered the evidence, and having heard arguments of counsel, and having considered the points and authorities submitted by counsel for both parties, now renders its decision.

The plaintiffs are husband and wife, citizens of the United States of America, and residents of the County of San Diego, State of California.

The plaintiffs filed joint federal income tax returns for the calendar years 1960, 1961, 1962 and 1963, which returns were timely filed and the taxes shown due on said returns were timely paid. Thereafter, on or about August 20, 1965, defendant assessed against plaintiffs deficiencies of income taxes for each of said calendar years 1960, 1961, 1962 and 1963.

The deficiency assessed for the calendar year 1960 was the sum of $11,320.30, and the interest thereon from the due date of the return, to wit: April 15, 1961, to the date of payment, was $2,952.58, making a total payment with respect to the said deficiency of $14,272.88.

The deficiency assessed for the calendar year 1961 was the sum of $493.47, and the interest thereon from the due date of the return, to wit: April 15, 1962, to the date of payment, was $99.10, making a total payment with respect to the said deficiency of $592.57.

The deficiency assessed for the calendar year 1962 was the sum of $612.37, and interest thereon from the due date of the return, to wit: April 15, 1963, to the date of payment, was $86.23, making a total payment with respect to the said deficiency of $698.60.

The deficiency assessed for the calendar year 1963 was the sum of $840.28, and interest thereon from the due date of the return, to wit: April 15, 1964, to the date of payment, was $103.59, making a total payment with respect to the said deficiency of $943.87.

12(e), 72 Stat. 348; Aug. 30, 1964, P.L. 88–519, 78 Stat. 699; Nov. 2, 1966, P.L. 89–719, Title II, § 202(a), 80 Stat. 1148.)

**1402. United States as defendant.—** (a) Any civil action against the United States under subsection (a) of section 1346 of this title may be prosecuted only:

(1) Except as provided in paragraph (2), in the judicial district where the plaintiff resides;

(2) In the case of a civil action by a corporation under paragraph (1) of subsection (a) of section 1346, in the judicial district in which is located the principal place of business or principal office or agency of the corporation; or if it has no principal place of business or principal office or agency in any judicial district (A) in the judicial district in which is located the office to which was made the return of the tax in respect of which the claim is made, or (B) if no return was made, in the judicial district in which lies the District of Columbia. Notwithstanding the foregoing provisions of this paragraph a district court, for the convenience of the parties and witnesses, in the interest of justice, may transfer any such action to any other district or division.

(b) Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

(c) Any civil action against the United States under subsection (e) of section 1346 of this title may be prosecuted only in the judicial district where the property is situated at the time of levy, or if no levy is made, in the judicial district in which the event occurred which gave rise to the cause of action. (June 25, 1948, c. 646, § 1, 62 Stat. 937; Sept. 2, 1958, P.L. 85–920, 72 Stat. 1770; Nov. 2, 1966, P.L. 89–719, Title II, § 202(b), 80 Stat. 1149.)

Plaintiffs paid the deficiency assessed for each of said years together with interest accrued to the date of payment, said payments and dates thereof being respectively as follows:

| | | |
|---|---|---|
| Calendar Year 1960 | $14,272.88 | August 30, 1965 |
| Calendar Year 1961 | $ 592.57 | August 30, 1965 |
| Calendar Year 1962 | $ 698.60 | August 30, 1965 |
| Calendar Year 1963 | $ 943.87 | May 4, 1966 |

On May 4, 1967, plaintiffs filed claims for refund of alleged overpayment of income tax for the years and in the amounts as follows:

| | |
|---|---|
| Calendar Year 1960 | $14,272.58 |
| Calendar Year 1961 | $ 592.57 |
| Calendar Year 1962 | $ 662.41 |
| Calendar Year 1963 | $ 943.87 |

which claims were filed within the time allowed by law and were in proper form. Said claims were not allowed and for a period in excess of six (6) months after the filing of said claims no notice of disallowance was issued by the Commissioner of Internal Revenue. Thereupon, having complied with the prerequisites of 26 U.S.C. Section 7422, plaintiffs filed this civil action for refund of taxes and interest erroneously and illegally collected.

The deficiencies assessed by the defendant resulted from a disallowance of a substantial portion of a demolition loss claimed by the plaintiffs on their 1960 federal income tax return, and the disallowance of deductions claimed for entertainment and automobile expense on their 1960, 1961, 1962 and 1963 federal income tax returns.

The issues to be decided are:

1. The sole issue to be determined in connection with the amount of the demolition loss is the fair market value of the improvements demolished on the date of the conversion of the property from private residential use to rental income property.

2. The issues to be determined with respect to the entertainment expenses and the automobile expenses for each of the four calendar years involved are:

(a) Whether the amounts claimed were actually expended by taxpayers for the purposes stated; and

(b) Whether these amounts constitute ordinary and necessary business expenses of the taxpayers.

The taxpayers acquired real property improved with a residence located at 330 Arlington Drive, Pasadena, California, in 1941, at a cost of $9,500.00, for use as a single family residence. The improvements on said property were originally constructed in 1911. Shortly after the acquisition of the property by the Plaintiff, certain improvements were made to the property at a cost of $3,-500.00. Thereafter additional improvements were made to the property consisting of major remodeling expenses and additions to the improvements as follows:

| | |
|---|---|
| 1950 | $22,700.00 |
| 1952 | $ 5,200.00 |

The improvements on said property consisted of a residence with a total of 6,395 square feet of area, a two-story garage, laundry and servants' quarters building with an area of 1,312 square feet, and yard improvements consisting of a car port, tool shed, walled patio, flagstone patio, fish pond, concrete barbeque, and miscellaneous other improvements consisting of walks, shrubs, plantings, sprinkler system, and an extensive driveway area.

Taxpayers occupied said property from date of acquisition until they decided to convert the property to rental income property. The date of conversion of the property from private residence to residential income property was May 1, 1958. Just prior to the date of conversion tax-

payers secured an appraisal of the value of the improvements on said real property from General Appraisal Company, Incorporated, appraisal engineers of Los Angeles, California. A copy of the appraisal of General Appraisal Company, Incorporated, was admitted into evidence as Plaintiff's Exhibit 1. Thereafter the plaintiffs rented the property for several months at a rental of $325.00 a month. After the first tenant vacated the premises and the taxpayers were unable to re-rent the property, they decided, by reason of the cost of maintenance, taxes and expenses, to demolish the improvements. The improvements were demolished in 1960. The cost of demolition was $3,200.00. During all of this period of time the property was in an R–1 single-family-residence zone of the City of Pasadena.

From the time of conversion of the property to the date of demolition the taxpayers claimed and deducted depreciation on said property in the total amount of $2,257.47.

The General Appraisal Company, Incorporated, appraised the improvements on the property and determined that the value of the improvements at the date of conversion was $33,862.04. The taxpayers adopted this figure as the fair market value of the property at the time of conversion for purposes of depreciation.

The demolition loss claimed by the taxpayers on their joint federal income tax return for the calendar year 1960 was the fair market value of the property at the time of the conversion from private residence to residential rental income property, $33,862.04, plus the cost of demolition, $3,200.00, less the depreciation deducted, $2,257.47, or $34,804.57.

The improvements which were demolished were insured against loss by fire at the time of the conversion of the property and at the time of the demolition of the property in the amount of $45,172.00. The cost of the improvements at the time of the conversion exceeded the value set by the General Appraisal Company, Incorporated.

The defendant's Revenue Agent allowed a demolition loss of $12,675.00 with respect to the plaintiff taxpayers' 1960 income tax return. Plaintiffs and defendant both introduced evidence as to the fair market value of the property. The appraiser for plaintiffs, H. F. Millar, a qualified appraiser, and an employee of General Appraisal Company, Incorporated, testified that in his opinion the fair market value of the improvements demolished as of the date of conversion was $33,862.04. Mr. Millar viewed the property and made measurements of all of the improvements and extensive notes of the condition thereof. The appraisal report of General Appraisal Company, Incorporated, which was prepared by him and members of the staff of the company, (Plaintiffs' Exhibit 1) contains a full description of the improvements demolished. Mr. Millar testified that the method he used in making his appraisal was to determine the new replacement value of the improvements and applying to that value appropriate depreciation factors. The result, he testified, was the present sound value according to the appraisal report. He also testified that the present sound value was equivalent to the fair market value.

The appraiser for defendant was Arthur Halsted, Jr., who is employed by the Internal Revenue Service as an engineer and was assigned to appraise the improvements which were demolished. Mr. Halsted was not assigned to the appraisal task until 1965 and had never seen the property, nor had he seen a photograph of it until the time of trial. He testified his only source of information concerning the improvements was the information contained in the report of General Appraisal Company, Incorporated. He testified he used a reproduction cost method, which he stated was essentially the same as the method used by Mr. Millar. Mr. Millar testified he used construction cost figures from local sources to develop the total new replacement value of the subject improvements. Mr. Halsted testified he used

construction cost figures from a service of Marshall and Stevens, Incorporated, which were national averages rather than local costs. While the new replacement value determined by Mr. Millar and the new reproduction costs determined by Mr. Halsted were not substantially different, the major difference between the two appraisals resulted from their application of the factor of depreciation applied to the new cost developed by each of them. Mr. Millar applied an average depreciation factor of 58.46%, as shown by an analysis of these figures prepared by Mr. Halsted. (See defendant's Exhibit F, Schedule A) Mr. Halsted applied a depreciation factor of 74% for all of the improvements. (See defendant's Exhibit F, pages 4 and 5) Mr. Halsted testified that the depreciation factor of 74% was taken from a schedule of depreciation prepared by Marshall and Stevens, and was an interpolated figure relating the actual life of the improvements, 47 years, to a life expectancy of the improvements of 50 years. He also testified that his depreciation factor was based on a 3-year life expectancy computed from the date of valuation appearing on his report, to wit: January 25, 1960. (See defendant's Exhibit F, page 1) He admitted on cross-examination that were he to have used the two year earlier date of conversion, the correct date on which the fair market value was to be determined, that would have increased his valuation by 40%. He also testified that if he were to have used a life expectancy of 60 years for the improvements, the depreciation factor for improvements 47 years of age would have been 57%. Mr. Halsted also testified that the fair market value of $33,862.04 testified to by Mr. Millar was within and at the top of his range of value.

With respect to the issues of entertainment and automobile expenses, Mr. Holland, one of the plaintiffs, testified that during the years 1960 and 1961 he was employed by Zellerbach Paper Company as Vice President and manager of the Southern Region of the company, which region included all of Southern California, Arizona and a portion of Nevada. He testified that he became Vice President and General Manager of the Southern Region in 1933, and continued in that position until his retirement in June of 1961. He testified that during this period the gross sales of his Region rose from approximately $1,500,000 per annum to about $45,000,000 per annum. He testified his salary was higher than that of anyone in the company except the President, Mr. Harold Zellerbach; that his duties consisted of general business contacts, building the business image and reputation of the company, and acting as a trouble-shooter in the event any of his salesmen or sales managers encountered problems or difficulties with customers; that in addition to managing approximately 500 employees during the last years of his employment with the company, his principal responsibility was to continue and maintain personal "first-name" contacts and relationships with top echelon officers and managers of major business enterprises throughout his Region; that in order to have appropriate places to keep and maintain such high level contacts and establish proper personal relationships with representatives of the company's customers he joined four golf clubs and one downtown luncheon club, as well as being a member of Rotary International, that all of said club memberships except his membership in San Gabriel Country Club were devoted primarily to business entertaining. He testified that major entertainment expenses involving large parties were subject to reimbursement by the company, and the usual and ordinary entertainment expenses he paid from his own funds. He testified this arrangement for division of entertainment expenses between himself and the company was pursuant to an understanding between himself and the President of the company, and he further testified that in order to maintain his status position and appropriate image with the company's Board of Directors and its President, he believed it neces-

sary that he continue to personally pay for ordinary entertainment expenses. He further testified that by virtue of his position and pursuant to his understanding with the President of the company, he was expected to incur and pay from his own funds these miscellaneous entertainment expenses; that the expenses deducted consisted of one-half of the club dues and minor charges incurred during the periods involved. Mr. Holland further testified that following his retirement as a full-time employee, he was retained by the company for one year, from June, 1961 to June, 1962, as a consultant, his primary responsibility being to effect a smooth transition and turn-over between himself and his successor, so that the valuable contacts and personal relationships he had established over the years could be passed on to his successor. He also testified that shortly after the termination of his employment as consultant he resigned from all but one of his clubs. Mr. Holland was unable to support the need for entertainment expense following the termination of his relationship as consultant.

Mr. Holland also testified that the automobile expenses he incurred were incurred in connection with his employment, and that the use of his automobile was necessary in connection therewith. He testified he frequently had breakfast meetings, drove to the airport, and otherwise used his automobile other than in going to or from work. He also testified the automobile expenses claimed on the income tax returns for 1960 and 1961 were incurred and paid by him on the automobile devoted to business use.

Plaintiff taxpayers on their 1962 federal income tax return claimed deductions for automobile expenses in the amount of $301.50, being 2,010 miles at 15¢ per mile, and in addition claimed a depreciation deduction for the automobile. Mr. Holland's testimony supported only 1,005 miles as the mileage driven in connection with his employment as a consultant during the year 1962. He was unable to support any deduction for automobile expenses during the calendar year

1963, as he was unable to show any business activity or transaction entered into for profit.

In accordance with the foregoing which shall also constitute findings of fact and conclusions of law, the Court now makes its formal findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiffs are citizens of the United States of America and reside in the County of San Diego in the Southern District of California.

2. This matter was duly and regularly transferred from the Southern District of California to the Central District of California. This court has jurisdiction and venue of this action for a refund of internal revenue taxes allegedly overpaid under and by virtue of the provision of Title 26, U.S.Code § 7422, and Title 28, U.S.Code §§ 1346(a) (1) and 1402(a) (2) and the internal revenue laws of the United States.

3. The fair market value of the improvements located on the property of plaintiff taxpayers at 330 Arlington Drive, Pasadena, California, as of the date of the conversion from private residential property to residential rental income property, to wit: May 1, 1958, was $33,862.04.

4. The cost basis of the improvements of the property at 330 Arlington Drive, Pasadena, California, exceeded the fair market value on said date of conversion.

5. The depreciation allowed and allowable on the improvements between the date of conversion and the date of demolition was $2,257.47.

6. The cost of demolition of the improvements on the property at 330 Arlington Drive was $3,200.00, and there was no salvage.

7. Taxpayer plaintiff, Philo K. Holland, incurred and paid during the year 1960 the sum of $1,599.84 on account of entertainment expenses, and $1,596.88 on account of automobile expenses, both of which were reasonable, ordinary and necessary business expenses of the tax-

payer incurred in connection with his employment.

8. Taxpayer plaintiff, Philo K. Holland, incurred and paid during the year 1961 the sum of $1,284.21 on account of entertainment expenses, and $1,821.07 on account of automobile expenses, both of which were reasonable, ordinary and necessary business expenses of the taxpayer incurred in connection with his employment.

9. Taxpayer plaintiff, Philo K. Holland, incurred and paid during the year 1962 the sum of $172.74 on account of entertainment expenses, and $100.50 on

account of automobile expenses, both of which were reasonable, ordinary and necessary business expenses of the taxpayer incurred in connection with his employment.

10. During the year 1963 taxpayer plaintiff, Philo K. Holland, did not incur entertainment or automobile expenses in connection with his employment or in connection with transactions entered into for profit.

11. Plaintiffs paid deficiency assessments for each of the calendar years together with interest accrued to date of payment, as shown below:

| Calendar Year | Deficiency Assessment | Accrued Interest | Total | Date of Payment |
|---|---|---|---|---|
| 1960 | $11,320.30 | $2,952.58 | $14,272.88 | August 30, 1965 |
| 1961 | $ 493.47 | $ 99.10 | $ 592.57 | August 30, 1965 |
| 1962 | $ 612.37 | $ 86.23 | $ 698.60 | August 30, 1965 |
| 1963 | $ 840.28 | $ 103.59 | $ 943.87 | May 4, 1966 |

12. Thereafter, within the time allowed by law, and on or about May 4, 1967, plaintiffs filed claims for refund of alleged overpayment of income taxes claiming refund for the years and in the amounts set forth below:

| | |
|---|---|
| Calendar Year 1960 | $14,272.58 |
| Calendar Year 1961 | $ 592.57 |
| Calendar Year 1962 | $ 662.41 |
| Calendar Year 1963 | $ 943.87 |

## CONCLUSIONS OF LAW

■ 1. A demolition loss may be claimed as a deduction against ordinary income in an amount not to exceed the adjusted basis of the demolished real property improvements in the hands of the taxpayer, plus the cost of demolition, less the amount of any salvage.[3]

3. *Regulations § 1.165–3* Demolition of Buildings.

\* \* \* \* \*

(b) *Intent to demolish formed subsequent to the time of acquisition.* (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of § 1.165–1 relating to amount deductible under section 165. The basis of any building acquired in re-

placement of the old buildings shall not include any part of the basis of the property demolished.

(2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof. (Subparagraph (2) was set forth to show that the exception noted in subparagraph (1) has no application to the present case.)

the lesser of the cost of such improve- the hands of the plaintiff taxpayers is molished real property improvements in 2. The adjusted basis of the dements or the fair market value thereof at the time of conversion, reduced by any depreciation allowed or allowable between the date of conversion and the date of demolition.[4]

3. Plaintiffs were entitled to deduct a demolition loss in the amount of $34,- 804.57 on their federal income tax return for the calendar year 1960, such amount being the adjusted basis of the property at the time of the demolition, to wit: the fair market value of $33,- 862.04 at the time of the conversion, less depreciation to date of demolition, $2,- 257.47, plus the cost of demolition, $3,200.00.[5]

 4. Plaintiffs were entitled to deduct on their federal income tax re-

---

4. Regulations § 1.167(f)–1 Basis for Depreciation. The basis upon which the allowance for depreciation is to be computed with respect to any property shall be the adjusted basis provided in section 1011 for the purpose of determining gain on the sale or other disposition of such property. In the case of property which has not been used in the trade or business or held for the production of income and which is thereafter converted to such use, the fair market value on the date of such conversion, if less than the adjusted basis of the property at that time, is the basis for computing depreciation.

5. *Regulations § 1.165–1*

§ 1.165–1 Losses. (a) Allowance of deduction. Section 165(a) provides that, in computing taxable income under section 63, any loss actually sustained during the taxable year and not made good by insurance or some other form of compensation shall be allowed as a deduction subject to any provision of the internal revenue laws which prohibits or limits the amount of deduction. This deduction for losses sustained shall be taken in accordance with section 165 and the regulations thereunder.

(b) Nature of loss allowable. To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.

(c) Amount deductible. (1) The amount of loss allowable as a deduction under section 165(a) shall not exceed the amount prescribed by § 1.1011–1 as the adjusted basis for determining the loss from the sale or other disposition of the property involved. In the case of each such deduction claimed, therefore, the basis of the property must be properly adjusted as prescribed by § 1.1011–1 for such items as expenditures, receipts, or losses, properly chargeable to capital account, and for such items as depreciation, obsolescence, amortization, and depletion, in order to determine the amount of loss allowable as a deduction. To determine the allowable loss in the case of property acquired before March 1, 1913, see also paragraph (b) of § 1.1053–1.

(2) The amount of loss recognized upon the sale or exchange of property shall be determined for purposes of section 165(a) in accordance with § 1.1002–1.

(3) A loss from the sale or exchange of a capital asset shall be allowed as a deduction under section 165(a) but only to the extent allowed in section 1211, relating to the limitation on capital losses, and section 1212, relating to the capital loss carryover, and in the regulations under those sections.

(4) In determining the amount of loss actually sustained for purposes of section 165(a), proper adjustment shall be made for any salvage value and for any insurance or other compensation received.

(d) Year of deduction. (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year.

(2) (i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received

turn for the year 1960 the sum of $1,-599.84 for entertainment expense,[6] and $1,596.88 for automobile expense incurred as ordinary and necessary busi-

may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release.

(ii) If in the year of the casualty or other event a portion of the loss is not covered by a claim for reimbursement with respect to which there is a reasonable prospect of recovery, then such portion of the loss is sustained during the taxable year in which the casualty or other event occurs. For example, if property having an adjusted basis of $10,000 is completely destroyed by fire in 1961, and if the taxpayer's only claim for reimbursement consists of an insurance claim for $8,000 which is settled in 1962, the taxpayer sustains a loss of $2,000 in 1961. However, if the taxpayer's automobile is completely destroyed in 1961 as a result of the negligence of another person and there exists a reasonable prospect of recovery on a claim for the full value of the automobile against such person, the taxpayer does not sustain any loss until the taxable year in which the claim is adjudicated or otherwise settled. If the automobile had an adjusted basis of $5,000 and the taxpayer secures a judgment of $4,000 in 1962, $1,000 is deductible for the taxable year 1962. If in 1963 it becomes reasonably certain that only $3,500 can ever be collected on such judgment, $500 is deductible for the taxable year 1963.

(iii) If the taxpayer deducted a loss in accordance with the provisions of this paragraph and in a subsequent taxable year receives reimbursement for such loss, he does not recompute the tax for the taxable year in which the deduction was taken but includes the amount of such reimbursement in his gross income for the taxable year in which received, subject to the provisions of section 111, relating to recovery of amounts previously deducted.

(3) Any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers the loss (see § 1.165-8, relating to theft losses). However, if in the year of discovery there exists a claim for reimburse-

ment with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received.

(4) The rules of this paragraph are applicable with respect to a casualty or other event which may result in a loss and which occurs after [January 16, 1960]. If the casualty or other event occurs on or before such date, a taxpayer may treat any loss resulting therefrom in accordance with the rules then applicable, or, if he so desires, in accordance with the provisions of this paragraph; but no provision of this paragraph shall be construed to permit a deduction of the same loss or any part thereof in more than one taxable year or to extend the period of limitations within which a claim for credit or refund may be filed under section 6511.

(e) Limitation on losses of individuals. In the case of an individual, the deduction for losses granted by section 165(a) shall, subject to the provisions of section 165(c) and paragraph (a) of this section, be limited to:

(1) Losses incurred in a trade or business;

(2) Losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

(3) Losses of property not connected with a trade or business and not incurred in any transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft, and if the loss involved has not been allowed for estate tax purposes in the estate tax return. For additional provisions pertaining to the allowance of casualty and theft losses, see §§ 1.165-7 and 1.165-8, respectively.

Source: TD 6445, approved January 12, 1960.

History: Republished as TD 6500, approved November 9, 1960, and amended by substituting material in [ ] for "the date of the publication of this paragraph in the Federal Register as a Treasury decision".

6. If a corporate officer was expected to incur entertainment expenses in the course of discharging his executive duties, he may deduct unreimbursed entertainment expenses which were actually paid

ness expenses incurred in connection with plaintiff Philo K. Holland's employment.[7]

5. The sum of $11,320.30 assessed against the plaintiffs as a deficiency for the calendar year 1960 was erroneously assessed and collected by the defendant, and plaintiffs are entitled to the return of said deficiency of $11,320.30 together with interest thereon paid by plaintiffs in the amount of $2,952.58, a total of $14,272.88, together with interest thereon from August 30, 1965 to date of payment at the rate of six per cent (6%) per annum.

6. Plaintiffs were entitled to deduct on their federal income tax return for the year 1961 the sum of $1,284.21 for entertainment expense, and $1,821.07 for automobile expense incurred as ordinary and necessary business expenses incurred in connection with plaintiff Philo K. Holland's employment.

7. The sum of $493.47 assessed against the plaintiffs as a deficiency for the calendar year 1961 was erroneously assessed and collected by the defendant, and plaintiffs are entitled to the return of said deficiency of $493.47 together with interest thereon paid by plaintiffs in the amount of $99.10, a total of $592.57, together with interest thereon from August 30, 1965 to date of payment at the rate of six per cent (6%) per annum.

8. Plaintiffs were entitled to deduct on their federal income tax return for the year 1962 the sum of $172.74 for entertainment expense, and $100.50 for automobile expense incurred as ordinary and necessary business expenses incur-

red in connection with plaintiff Philo K. Holland's employment.

9. That of the sum of $612.37 assessed against plaintiffs as a deficiency for the calendar year 1962, the sum of $23.12 was erroneously assessed and collected by the defendant, and plaintiffs are entitled to the return of $23.12 together with interest paid thereon in the amount of $3.29, a total of $26.41, together with interest thereon from August 30, 1965, to date of payment at the rate of six per cent (6%) per annum.

10. That no tax was erroneously assessed and collected by defendant from plaintiffs for the calendar year 1963.

Let judgment be entered accordingly.

by him as ordinary and necessary expenses of his business as a corporate executive. Frederick S. Klein, 25 T.C. 1045, 1052 (1956) ; Schmidlapp v. Commissioner, 2 Cir., 96 F.2d 680 (1938) ; Albert L. Sanders, 26 T.C.Memo 87 (1957). See also Revenue Ruling § 57–502.

7. INTERNAL REVENUE CODE Sec. 162(a) (2)
Sec. 162 TRADE OR BUSINESS EXPENSES.

(a) In General.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
(1) * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and
(3) * * *