ROBERT O. AND RITA R. EDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eder v. Commissioner
Docket No. 17717-79.
United States Tax Court
T.C. Memo 1981-408; 1981 Tax Ct. Memo LEXIS 337; 42 T.C.M. (CCH) 585; T.C.M. (RIA) 81408; August 6, 1981. Robert O. Eder, pro se. Kenneth W. McWade, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $ 5,904.83 in petitioners' 1975 Federal income taxes. The issue for decision is whether petitioners are entitled to claim employee business expense deductions in an amount greater than that allowed by respondent. FINDINGS OF FACT Petitioners Robert O. Eder (petitioner) and Rita R. Eder (Rita), husband and wife, were legal residents of Valdez, Alaska, when they filed their petition. Petitioners filed a joint Federal income tax return for 1975 with the Internal Revenue Service Center, Ogden, Utah. During 1975 petitioners each owned 1/6 of the outstanding shares of Valdez Office Buildings, Inc., (Valdez, Inc., or V.O.B. Inc. *338 ) a corporation founded under the laws of the State of Alaska in 1971. The remaining shareholders of Valdez, Inc., each also owning 1/6 of the outstanding stock, were Owen P. Johnson, Joyce J. Johnson, Maurice L. Wilson, and Jane R. Wilson. From the date of incorporation through 1975, petitioner was the president of Valdez, Inc. During the year in issue, Rita was the vice-president in charge of retail sales (liquor store manager), Maurice Wilson was the vice-president, and Joyce Johnson was the secretary-treasurer. The board of directors consisted of petitioner, Maurice Wilson, and Owen Johnson. Valdez, Inc., was involved in the construction and rental of office space and residential apartments in Valdez, Alaska. Valdez, Inc., also was involved in retail liquor sales through its subsidiary, the Valdez Bottle Stop. The minutes of a 1972 meeting of the board of directors of Valdez, Inc., state, interalia: The Secretary Treasurer pointed out that there has been no income since the building was constructed in early 1970 and the directors will have to inject the necessary capital into V.O.B Inc. to meet the bank payments and for all other necessary expenses. The directors *339 agreed to inject this necessary capital into the corporation and they would be paid back at 6% interest when the corporation began making a profit. Further Resolved that the Directors are requested to spend personal funds to promote and expand the Valdez Office Building, Inc. business in order to make this corporation successful and financially profitable. Included in the minutes for 1973 is a resolution that "the stockholders continue to inject capital into the corporation and spend private funds to promote this corporation." The 1974 minutes contain the following resolutions: Resolved that Pres. Eder and Vice Pres. Wilson take our personal loans to purchase Pacific Modular duplexes from Seattle and have them barged to Valdez for conversion into two four plex units. Wilson and Eder are authorized to travel to Seattle to close the deal on the duplexes. Resolved that they are to use their personal funds for this trip. Resolved that all six stockholders become familiar with the liquor retail business to ensure that V.O.B. Inc. will become a successful and profitable business investment for the six stockholders. The stockholders are encouraged to expend personal funds to *340 promote the business and to educate themselves regarding office and residential rental units and the liquor retail business. Resolved that V.O.B. Inc. will reimburse the stockholders for the injected capital between 1969 and 1974 plus 6% interest. The minutes for 1977 included the following: Further discussion pointed out that a large measure of the success of the Corporation depended upon continuing promotion by the Officers and Stockholders, and that continuing personal contact of both Suppliers and customers alike increased the appeal of the Corporation, it was; Resolved that expenses involved in such promotions that benefit the Corporation be reimbursed by the Corporation, including, but not limited to, meetings with Distributors, Suppliers, Account Executives, Finantial Advisors, and other [sic] involved in the successful operation of a multi-faceted business, including valued customers, and in entering activities such a [sic] parades, special events, and tournaments that promote and expand the existance [sic] of the Corporation. Such expenses shall be documented and presented to the Corporation for reimbursement within 30 days following the end of the year. *341 Finally, the 1978 minutes included the following statements: Further discussion pointed out that a large measure of success of the Corporation depended upon continuing promotion by the Officers and Stockholders, and that continuing personal contact of both suppliers and customers alike increased the appeal of the Corporation, RESOLVED that the Treasure of the Corporation is hereby authorized and directed to pay each officer $ 120 per week. The salary is intended to cover travel expenses entertainment expenses and miscellaneous expenses connected with Valdez Bottle Stop and Valdez Office Building Inc. The part of the salary not expended for these purposes shall be considered regular income. Officers are encouraged to attend at least one business related convention or to meet with distributors, during the course of the year; the company is authorized to expend up to $ 1000 per officer during 1978 for the purpose of staying on top of changes in the business field, and to discuss joint problems in the various seminars and meetings held thru the year. On their 1975 return, petitioners claimed various employee business expenses in connection with their services as officers of *342 the corporation. These expenses, along with the amounts respondent agrees have been substantiated, [1] are as follows: Valdez Office Building, Inc. (Travel (meals and lodging)) Meals
Meals
Lodging
Lodging
Dates
Claimed
Substantiated
Claimed
Substantiated
2-5 to 2-7-75
$ 150.00
$ 114.99
$ 120.00
$ 58.35
2-21 to 2-26-75
250.00
18.55
200.00
28.82
5-29 to 6-1-75
200.00
51.70
160.00
0
6-25 to 6-29-75
250.00
34.00
200.00
0
$ 850.00
$ 219.24
$ 680.00
$ 87.17
Other expenses:
Claimed
Substantiated
Lunch for carpenters, electricians
$ 125.00
[1] $ 125.00
Auto expense, 1500 mi. at 10 cents
per mi.
150.00
[1] 150.00
Tool expense
150.00
[1] 55.00
Safe purchase
0
[2] 100.00
Chamber of Commerce Lunches
40 at $ 8.00 ea.
320.00
[1] 320.00
$ 745.00
$ 750.00
*343 See footnotes at end of table on page 6. Valdez Bottle Stop
Meals
Meals
Lodging
Lodging
Dates
Claimed
Substantiated
Claimed
Substantiated
1-4 to 1-7-75
$ 200.00
0
$ 160.00
0
1-8 to 1-31-75
325.00
$ 266.69
260.00
$ 140.17
1-31 to 2-4-75
250.00
0
200.00
88.94
7-22 to 7-28-75
350.00
49,80
280.00
0
8-21 to 8-24-75
200.00
20.00
160.00
0
11-7 to 11-9-75
150.00
68.00
120.00
0
12-13 to 12-15-75
200.00
0
160.00
0
$ 1,675.00
$ 404.49
$ 1,340.00
$ 229.11
Other expenses:
Claimed
Substantiated
Airfares
$ 680.00
$ 680.00
Depreciation on home used for
office, storage
1,750.00
1,750.00
Utilities allocable to office,
storage
1,280.03
561.52
Auto expense, $ 1,777.40 x 90%
business use
1,599.67
1,300.00
Depreciation - auto used for
business
900.00
900.00
Entertainment salesmen, customers
581.25
n1 581.25
Drinks given to customers
2,135.70
[1] 2,135.70
$ 8,926.65
$ 7,908.47
*344 During 1975, petitioners did not file claims or requests for reimbursement of expenses incurred by them on behalf of Valdez, Inc.Valdez, Inc. reported taxable income of $ 18,151 and $ 90,373 for 1974 and 1975, respectively. Respondent disallowed the employee business expense deductions claimed by petitioners. He asserts that those expenses were properly deductible by the corporations rather than by petitioners. Alternatively, respondent contends that if the expenses were properly deductible by petitioners, then the amount of the deduction should be limited to those expenses that respondent agrees have been substantiated and that constitute ordinary and necessary expenses. OPINION Section 162 [2] provides a deduction for ordinary and necessary expenses incurred in carrying on a trade or business. It is well established that, absent a binding obligation, a taxpayer may not deduct expenses incurred for the benefit of another. Deputy v. DuPont, 308 U.S. 488, 493 (1940); Noland v. Commissioner, 269 F.2d 108, 109 (4th Cir. 1959); *345 Westerman v. Commissioner, 55 T.C. 478, 482 (1970). Thus, corporate officers, employees, and shareholders who voluntarily incur corporate expenses are not entitled to a deduction for these expensitures because they are not considered necessary employee expenses. [3]Westerman v. Commissioner, supra; Koree v. Commissioner, 40 T.C. 961, 965-966 (1963); Stolk v. Commissioner, 40 T.C. 345, 356-359 (1963); Jergens v. Commissioner, 17 T.C. 806, 811 (1954). On the other hand, where, as a condition of his employment, an employee incurs unreimbursed expenses on behalf of his employer, the employee may deduct those expenses which are ordinary and necessary to his business as an employee to the extent they are not subject to reimbursement. Schmidlapp v. Commissioner, 96 F.2d 680 (2d Cir. 1938); Holland v. United States, 311 F. Supp. 422 (C.D. Cal. 1970); Rev. Rul. 57-502, 1957-2 C.B. 118. *346 The expenditures in dispute ostensibly were made for the benefit of Valdez, Inc., and its subsidiary, Valdez Bottle Stop. Citing the corporate minutes, the pertinent passages of which are set forth in our findings of fact, petitioners argue, however, that they were required to incur those expenses even though no reimbursement was available in the taxable years. Petitioners particularly rely upon the 1972, 1973, and 1974 resolutions encouraging the directors and stockholders to use personal funds to promote the corporation. Petitioners also rely upon the 1978 minutes which state that the salary paid to each officer was intended to cover travel, entertainment, and miscellaneous expenses incurred in the pursuit of the corporation's business. After carefully examining those minutes, as well as the entire record in this case, we do not think that petitioners were required to incur those expenses as a condition of their employment as corporate officers. First, as we read the 1972-1974 minutes, the resolutions cited by petitioners merely "encourage" and "request" that personal funds be used to promote the corporation. Those resolutions do not require that corporate expenses be incurred *347 as a condition of employment. Second, the resolutions relied upon by petitioner are directed at the "stockholders" and "directors," rather than towards a particular officer or employee. We have held on numerous occasions that a shareholder is not entitled to a deduction for incurring corporate expenses; such amounts constitute either a loan or a contribution of capital to the corporation and are deductible, if at all, by the corporation. See, e.g., Rink v. Commissioner, 51 T.C. 746, 751 (1969); Koree v. Commissioner, supra; Kahn v. Commissioner, 26 T.C. 273, 274 (1956). Any other rule would permit a shareholder, in effect, to obtain deductions for amounts used to capitalize his corporation. Third, a complete reading of the corporate minutes also undercuts petitioner's argument that the 1972-1974 minutes establish a general requirement that petitioners incur corporate expenses out of their own pocket. For example, the 1974 minutes contain a resolution authorizing petitioner and Vice President Wilson to take a specific business trip. The resolution further states that they are to use personal funds for the trip. If, as petitioners *348 contend, they were generally required to travel and incur corporate expenses as a condition of their employment, this latter resolution would have been unnecessary. Thus, this and other similar resolutions indicate that when the officers were required to make a business trip or otherwise incur corporate expenses out of their personal funds, they were specifically instructed to do so. Unfortunately for petitioners, however, the minutes for 1975 do not contain any such instructions. Fourth, because the six stockholders were also the directors and officers of the corporation, we do not think that the resolutions can in reality be said to require petitioners to expend personal funds for corporate expenses as a condition of their employment. The action taken by the corporation was taken with petitioners' concurrence. It seems to us that this is merely an attempt to shift legitimate corporate expense deductions from the corporation, which had little income, to the stockholders, who presumably could derive a greater tax benefit from those deductions. Finally, we do not think the 1978 minutes, which contain a resolution stating that certain corporate expenses were to be paid out *349 of the officer's salary, support petitioners' contention. The salaries referred to in that resolution were not authorized until 1978. Although the stockholders received bonuses and other compensation prior to 1978, there was no stipulation that the amounts received were to cover corporate expenses. In addition, the resolution adopted in 1972, quoted in part in our findings, states that directors who injected the necessary capital "would be paid back at 6% interest when the corporation began making a profit." Similar provisions appear in the resolutions adopted in 1974. The minutes for 1977 reflect a resolution authorizing reimbursement for certain expenditures within 30 days after the close of the year. The minutes for 1978 state that: "Beginning in 1975 the corporation began making a profit and it was finally possible to began [sic] reimbursing the six shareholders/directors for their expenses associated with operating and promoting Valdez Office Building, Inc." These minutes tend to show that the advances made by petitioner were loans to the corporation, not deductible expenses. Westerman v. Commissioner, supra at 482. Thus, we think that in the light *350 of all the evidence it is clear that the expenses incurred by petitioners were deductible, if at all, as ordinary and necessary expenses of the corporation and not expenses required as a condition of their employment. Consequently, petitioners may not deduct those expenses against their personal income. Jergens v. Commissioner, supra.We need not decide whether the expenditures were capital contributions, whether petitioners were entitled to reimbursement for their expenditures, or which expenses, if any, were ordinary and necessary to the corporation's business. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Although respondent has stipulated in his brief that the amounts have been substantiated, he contends that the expenses are corporate expenses and not deductible by petitioners. The corporate minutes for 1975 deal only with the adoption of an employee profit-sharing plan. They contain nothing referring to the expenditure of personal funds for corporate expenses.↩
1. Although respondent agrees that these amounts have been substantiated, he does not agree that they constitute ordinary and necessary business expenses. ↩
2. Although respondent agrees that this amount is correct respondent does not agree that it constitutes an ordinary and necessary business expense or that the expenditure is not a capital expense.↩
1. Although respondent agrees that these amounts have been substantiated, he does not agree that they constitute ordinary and necessary business expenses.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
3. The reason for the rule is explained in Noland v. Commissioner, 269 F.2d 108, 109 (4th Cir. 1959), as follows: The business of a corporation is not that of its officers, employees, or stockholders, and though the individual stockholder-executive, in his own mind, may identify his interest and business with those of the corporation, they legally are distinct, and, ordinarily, if he voluntarily pays or guarantees the corporation's obligations, his expense may not be deducted on his personal income tax return.↩