DONALD D. SCALLEY AND KATHLEEN SCALLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scalley v. Commissioner
Docket No. 27968-89
United States Tax Court
T.C. Memo 1992-123; 1992 Tax Ct. Memo LEXIS 144; 63 T.C.M. (CCH) 2238; T.C.M. (RIA) 92123; March 2, 1992, Filed *144 Decision will be entered under Rule 155. Donald D. Scalley and Kathleen Scalley, pro se. Marcie B. Harrison, for respondent. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in and additions to petitioners' Federal income tax for the 1985 tax year as follows:  Additions to tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
$ 20,150
$ 1,008
50% of the
$ 5,038
interest due
on the deficiency
After concessions by respondent, the issues for decision are: (1) Whether petitioners are entitled to deduct $ 19,543 in dining and entertainment expenses and athletic club membership fees as unreimbursed employee business expenses; (2) whether petitioners are entitled to an ordinary loss deduction of $ 10,000 for their cash investment in 1977 in a master recording tax shelter; (3) whether petitioners are entitled to deduct $ 2,473 as interest expense; and (4) whether petitioners are liable for additions to tax under sections 6653(a) and 6661. All section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS *145 OF FACT We incorporate by reference the stipulation of facts and attached exhibits. Petitioners Donald D. and Kathleen Scalley resided in New York, New York, when the petition was filed in this case. All references to petitioner in the singular will be to Donald Scalley. During 1985, petitioner was employed at Thomson McKinnon Securities, Inc. (Thomson McKinnon), as sales manager of the municipal bond department and as a salesman. In addition to managing a sales force, he also was responsible for various institutional clients. During 1985, petitioner kept a diary of his entertainment activities. In his diary, he detailed the dates, costs, and purposes of his entertaining for the year. Several times a week throughout 1985, petitioner invited his coworkers, and often their spouses, to dine with him at various restaurants in Manhattan. During the summer of 1985, petitioner hosted numerous tennis parties, dinner parties, and cocktail parties for his coworkers and their spouses. Petitioner maintained memberships at the West Hampton Country Club in West Hampton Beach and the Downtown Athletic Club in Manhattan, where he hosted many of these parties and often spent time with his *146 coworkers. Thomson McKinnon had in effect for 1985 a profit incentive plan that was designed to reduce company expenses. Under the plan, only necessary and essential expenses directly related to new business or income to the firm would be reimbursed. Despite this plan, however, Thomson McKinnon expected its executives to incur expenses, albeit unreimbursable expenses, for transportation and entertainment of clients with whom it was desirable to maintain a good business relationship. In 1985, petitioner was reimbursed by Thomson McKinnon for business expenses in the approximate amount of $ 3,200. On their 1985 income tax return, petitioners deducted approximately $ 23,753 as dining and entertainment expenses related to business. Respondent has disallowed all but $ 4,210 of this amount. Petitioners claimed a $ 10,000 deduction on Form 4797, which they attached to their 1985 income tax return. Form 4797 is for reporting gains and losses from sales or exchanges of assets used in a trade or business and involuntary conversions. The $ 10,000 deducted by petitioners represented their cash investment in 1977 in a master recording tax shelter. For tax years 1977 and 1978, petitioners *147 claimed losses resulting from this investment. Respondent previously has disallowed these losses, and petitioners have paid the taxes and additions due. Petitioners deducted $ 37,415 in interest expense on Schedule A of their 1985 income tax return. They indicated on their return that approximately $ 7,000 of this amount represented interest paid to the Internal Revenue Service (IRS). In respondent's notice of deficiency, he conceded that petitioners were entitled to an interest expense deduction of $ 19,338, and subsequently he has conceded an additional $ 15,604 for a total allowance of $ 34,942. Of this amount, approximately $ 4,500 represents interest paid to the IRS. OPINION 1. Employee Business Expenses
Section 162(a) allows a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. However, funds spent on personal expenses are not deductible. Sec. 262. All of the expenditures in dispute in the instant case were of a social nature. Petitioners' claim for a deduction is based on petitioner's contention that he incurred these expenses as a requirement of his employment. When an employee incurs unreimbursed expenses *148 on behalf of his employer, as a condition of his employment, the employee may deduct such expenses. Schmidlapp v. Commissioner, 96 F.2d 680 (2d Cir. 1938); Holland v. United States, 311 F. Supp. 422 (C.D. Cal. 1970); Rev. Rul. 57-502, 1957-2 C.B. 118. Petitioner testified that it was not uncommon for managers at Thomson McKinnon to spend up to 20 percent of their salaries on dining and entertainment expenses. Petitioner also testified that the expenses he incurred ultimately served to promote business for Thomson McKinnon by increasing sales and profitability in his department. These expenditures allowed him to recruit new employees, to motivate and retain his existing sales staff, and to facilitate employees' exchanging of information about product developments within the municipal bond industry. Five witnesses, four of whom were salesmen in the municipal bond department, testified on petitioner's behalf. They stated that throughout the year they had dined with or attended parties hosted by petitioner outside of the office. Not only were such events common practice on Wall Street, but they were necessary because *149 the tumultuous and noisy atmosphere in the trading room where they worked prevented any meaningful discussions from taking place. Moreover, as commissioned salesmen, they were unwilling to be away from the trading room during the hours when the markets were trading; therefore, the only time that they could discuss business was outside of working hours. They testified that business was always discussed at these dinners, luncheons, and parties, and that these gatherings made them feel as though they "weren't on the front lines being forgotten." At trial, petitioners submitted into evidence a letter from Michael Shapiro, executive vice president of Thomson McKinnon, describing the firm's policy concerning entertainment and travel expenses. The letter, which had been sent to respondent prior to trial, stated that salesmen/executives of Thomson McKinnon were "authorized and directed" to bear entertainment and travel expenses necessary to establish and maintain good relationships with clients, although the firm would not reimburse them for such expenses. The expenses which were disallowed in this case were almost exclusively entertainment and recreational expenses relating to coworkers *150 and their spouses. Respondent argues that petitioners cannot deduct the entertainment expenses incurred in 1985 because they were primarily personal in nature and only incidentally related to business. As support for his position, respondent cites Moss v. Commissioner, 80 T.C. 1073 (1983), affd. 758 F.2d 211 (7th Cir. 1985), and Hankenson v. Commissioner, T.C. Memo. 1984-200. In Moss, a partner in a law firm was not allowed to deduct the costs of daily lunches with his colleagues. The Court stated: In the instant case, we are convinced that petitioner * * * discussed business at lunch, that the meeting was a part of their working day, and that the time was the most convenient time at which to meet. We are also convinced that the partnership benefited from the exchange of information and ideas that occurred. But this does not make his lunch deductible any more than riding to work together each morning to discuss partnership affairs would make his share of the commuting costs deductible. * * * [Moss v. Commissioner, supra at 1080-1081.]
In Hankenson, a physician was not allowed to deduct *151 the cost of meals with other doctors and nurses, although the meals were used for discussing treatment of patients and for obtaining patient referrals. This Court found that the taxpayer's luncheon meetings were a routine event and were not called for a specific business purpose. Although such luncheons were held at the most convenient time and although general business was discussed, the meal expenses were primarily personal. We believe that the instant case is governed by the above-cited cases. Petitioner's costs in entertaining his fellow employees may have somehow contributed to high morale and increased productivity within his department, but this does not transform personal expenses into ordinary and necessary business expenses. Moreover, Thomson McKinnon had in effect during 1985 a profit incentive program under which employees were reimbursed only for expenses that the company considered necessary. Peter O'Byrne, an assistant vice president with Thomson McKinnon, testified that petitioner was reimbursed in the approximate amount of $ 3,200 for business expenses incurred in 1985. In Noland v. Commissioner, 269 F.2d 108, 113 (4th Cir. 1959), affg. T.C. Memo. 1958-60, *152 the Court stated: When the corporation, reimbursing its officers and employees for direct expense incurred in furthering its business, does not reimburse an officer for particular expense, that expense prima facie is personal, either because it was voluntarily assumed or because it did not arise directly out of the exigencies of the business of the corporation. [Citation omitted.]
Finally, after examining the letter from Michael Shapiro, as well as the entire record in this case, we do not think that petitioner was required to incur these entertainment expenses as a condition of his employment. See Stolk v. Commissioner, 40 T.C. 345, 357 (1963), affd. 326 F.2d 760 (2d Cir. 1964), where we disallowed a corporate officer's deduction for costs of entertainment and gifts, in part, for the taxpayer's failure "to prove that as part of his duties the corporation expected or required him to assume and pay from his own funds any of the disputed expenses, without repayment." As we read the letter, Thomson McKinnon's policy directs its executives to incur unreimbursable entertainment and travel expenses as necessary to establish and maintain good *153 relationships with clients, not coworkers. Respondent has allowed a deduction of $ 4,210 for those business expenses that reflected direct client contact. Accordingly, we sustain respondent's determination to disallow the remaining $ 19,543 in entertainment expenses. 2. $ 10,000 Ordinary Loss
In 1977, petitioner invested in a master recording tax shelter. He made a $ 10,000 cash payment and signed a nonrecourse promissory note in the amount of $ 55,000. Petitioners reported losses as a result of this investment on their 1977 and 1978 tax returns. Respondent disallowed the losses and petitioners paid all taxes and additions owed. On their 1985 income tax return, petitioners claimed a deduction for their $ 10,000 payment made in 1977, claiming a 1986 rejection of an offer in compromise as the reason for such deduction. Deductions are a matter of legislative grace, and a taxpayer claiming the benefits of a deduction must point to applicable statutory authority and show that he or she comes within its provisions. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The record is quite fuzzy about the background of the offer in compromise, but *154 in any event, respondent's 1986 rejection of an offer in compromise without more explanation does not provide petitioners with a legal basis for claiming a deduction in 1985 for a $ 10,000 payment in 1977. During trial and in their briefs, petitioners contend that they are entitled to a deduction for their out-of-pocket loss because they entered into the master recording deal in 1977 with the intent to make a profit, and because now the loss represents a bad debt. Respondent argues that petitioners did not have a profit motive when they invested in the master recording deal, and therefore, they are not entitled to any deductions for losses resulting from this activity. We sustain respondent's determination that petitioners are not entitled to a loss deduction for the cash payment invested in the master recording transaction under section 165(c)(2) because the transaction was not entered into for a profit. 3. Interest Expense Deduction
After concessions by respondent, there remains in dispute $ 2,473 of disallowed interest expense for which petitioners claimed a deduction in 1985. Petitioners submitted into evidence copies of four checks made payable to the IRS totaling *155 $ 8,961.76 to substantiate their claim that they paid $ 7,000 in interest to respondent in 1985. However, this evidence does not support petitioners' claims. First, the checks do not indicate that these payments were applied to interest. Second, one of the checks, which was made payable in the amount of $ 7,000, was dated 1986. Third, respondent has conceded that petitioners paid approximately $ 4,500 in interest payments to the IRS in 1985. Petitioners have not proven that these checks represent interest payments above the amount already allowed. Accordingly, petitioners have not shown that they are entitled to deduct the $ 2,473 in interest expense disallowed by respondent. 4. Additions to Tax
Section 6653(a) provides that an addition to tax is due if all or part of the taxpayer's underpayment of tax is due to negligence or intentional disregard of rules or regulations. Negligence under this section is "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). *156 Petitioner was a successful businessman. We find that he should have known or could have made an effort to inquire into the correctness of his positions pertaining to deductions for employee business expenses, losses, and interest expense payments in 1985. Petitioners have presented no evidence concerning these additions to tax; therefore, we sustain respondent's determination for the additions to tax under section 6653(a)(1) and (2). Section 6661 provides for an addition to tax for a substantial understatement of income tax liability. "Substantial understatement" means an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A)(i) and (ii). The amount of the understatement will be reduced by the portion of the understatement for which there was either substantial authority for the taxpayer's return position or adequate disclosure in the return. Sec. 6661(b)(2)(B)(i) and (ii). Even with the concessions by respondent, a substantial understatement of income tax exists in 1985. Petitioners have offered no evidence that substantial authority exists for their positions or that adequate disclosure was made *157 under section 6661(b)(2)(B). We find that petitioners are liable for the addition to tax under section 6661. Decision will be entered under Rule 155.