OPINION Raum, Judge: We cannot agree that the rent paid by petitioner in respect of the Cuban corporation’s obligations under the lease constituted expenses incurred by him “in carrying on” his “trade or business” within section 162, I.R.C. 1954, as urged by him. He relies on no other statutory provision. Although petitioner described his occupation on his income tax returns as an “Industrial Engineer and Consultant,” these words are misleading. He had a continuous position as president of the foundation at a fixed salary. During the years before us lie did not receive any fees or salaries from any other source, nor does it appear that he held himself out as a consultant or otherwise or that he offered his services to potential clients or to anyone else for a fee or other compensation. lie has not shown that he was engaged in any business or occupation other than as a salaried officer or employee of the foundation. And the expenditures in question certainly did not relate to that salaried employment. Nor is there any suggestion that petitioner was in the business of promoting corporate enterprises so as to furnish a basis for the deduction of promoter’s expenses in carrying on such business. Cf. Whipple v. Commissioner, 373 U.S. 193, 202-203. The business of the Cuban corporation was not his business within the meaning of the statute. Cf. Deputy v. du Pont, 308 U.S. 488; Dalton v. Bowers, 287 U.S. 404. The present case is to be sharply distinguished from Lou Levy, 80 T.C. 1315, 1329, relied upon by petitioners, where the expenditures in question were directly related to the business carried on by the taxpayer. Charles J. Dinardo, 22 T.C. 430, and Cubbedge Snow, 31 T.C. 585,[1] also relied upon, are similarly distinguishable. There is, however, an even more fundamental ground for the dis-allowance of the deduction, namely, that the expenditures were predominantly capital in nature. Without doubt petitioner intended to profit in some fashion from the glycerine venture and it was for that reason that he paid the rentals in question. But those payments represented, as to him, capital expenditures. In the first place it was he who had purchased all of the then outstanding stock of the Cuban corporation, and he owned all of that stock during the tax years except two qualifying shares. Plainly, an outlay by a stockholder in behalf of his corporation, absent any fixed obligation for repayment,[2] is generally regarded as a contribution to capital which should be added to the basis of his stock. Cf. Menihan v. Commissioner, 79 F. 2d 304 (C.A.2). In the second place, it must be remembered that petitioner was the sole owner of the Glycerine Corporation of America which.controlled the patents that were to be used by the Cuban corporation in the proposed venture, and the plan called for l’oyalties to be paid to the Glycerine Corporation of America on the Cuban corporation’s entire production of up to 20 million pounds of glycerine a year. Here, then, were payments by petitioner in furtherance of a venture calculated to enrich the Glycerine Corporation of America and thus to enhance his interest therein. For this reason alone the payments may not be regarded as ordinary expenses but must be treated as capital in nature. We deem it of no moment that stock had not yet been issued by the Glycerine Corporation of America. Petitioner was its organizer and president; he was in complete control; and could cause its stock to be issued to himself at will. It was his corporation, his asset, and any enhancement of its value meant a corresponding enhancement of his proprietary interest therein. The blunt realities of the situation before us disclose that the success of the Cuban venture was directly related to capital assets of the petitioner, whether they be regarded as stock in the Cuban corporation or ownership of Glycerine Corporation of America or both. And the payments in respect thereof were capital outlays as to him rather than ordinary business expenses. To be sure, there was testimony that petitioner made the expenditures in order to obtain a contract of employment from the Cuban corporation as a consultant or adviser, and indeed we have made a finding that he expected to receive such contract of employment. However, apart from the doubt whether such purpose might justify the deduction,[3] we must take that testimony with at least a grain of salt. We observed petitioner and listened to the testimony, but we were not convinced that the expectation of a contract of employment did in fact motivate his making the advances. We do not doubt that petitioner contemplated the possibility of serving the corporation at some future time, and that such service would be well compensated. But, as we view the evidence, the possibilities of very great enhancement of his proprietary interests loom too large to be ignored as the dominant reasons for the expenditures. We think that the possibility of being retained as a consultant or in some other capacity was at best merely of secondary concern to him and that he did not pay the rent of the Cuban corporation for that reason. His testimony to the contrary did not ring true. We hold that his payment of the rentals constituted nondeductible capital expenditures and that the claimed deductions were not properly alloAA’able on this ground as well as on the ground that petitioner failed to show that they were related to a trade or business carried on by him. Decision will be entered, for the respondent. The Cubbedge Snow and Dinardo cases must In any event be read in the light of the later decisions in S. M. Howard, 39 T.C. 833, and Charles Oran Mensik, 37 T.C. 703, 749-750. Tile parties have stipulated that there was no “agreement” for reimbursement, and also that there was no “agreement” providing for the issuance of stock in return for the expenditures in Question. As to the latter, many a capital contribution does not involve tlie issuance of any stock. Petitioner already was the sole beneficial stockholder at the time of the expenditures. Moreover, even though there was no “agreement” for the Issuance of any stock in respect of the rentals paid by him, it was far from clear, in view of his dominant position, that additional stock might not in fact be issued to him to reflect such payments at a later time when stock might be offered for sale to outsiders generally. There is no assurance whatever on this record that the advances in question would not ultimately be reflected in shares of stock owned or to be owned by petitioner. Cf. S. M. Howard, 39 T.C. 833; Charles Oran Mensik, 37 T.C. 703, 749-750.