REX B. JEPPSEN and JEAN M. JEPPSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jeppsen v. Commissioner
Docket No. 8177-76.
United States Tax Court
T.C. Memo 1977-274; 1977 Tax Ct. Memo LEXIS 168; 36 T.C.M. (CCH) 1101; T.C.M. (RIA) 770274; August 16, 1977, Filed Rex B. Jeppsen, pro se. James D. Vandever, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the calendar year 1974 in the amount of $3,556. After concessions, the two issues for our decision are whether petitioners are entitled to a deduction for living expenses away from home under section 162(a)(2), I.R.C. 1954, and whether petitioners are entitled to a claimed charitable contribution. FINDINGS OF FACT Most of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners Rex B. Jeppsen and Jean M. Jeppsen, husband and wife, were living in Long Beach, California at the time they filed their petition herein. They filed a timely 1974 Federal income tax return. *170 Since petitioner Jean M. Jeppsen is a party hereto solely because she filed a joint tax return with her husband, Rex B. Jeppsen will hereafter be referred to as the petitioner. Petitioner was employed in the Federal civil service from 1941 until 1965. From 1959 until December, 1965, petitioner worked in the Federal Aviation Administration ("FAA") and was stationed in FAA offices in various California cities. In December, 1965, at the initiation of the FAA, petitioner was removed from active service pending a determination by the FAA and/or the U.S. Civil Service Commission as to whether he was suffering from a psychiatric disability. Subsequently petitioner was placed on indefinite medical leave by the FAA. After leaving the FAA in 1965, petitioner searched for work in the southern California area, but did not find employment except for short periods in early 1967 when he worked at General Motors and Pacific Ordinance installations in the Los Angeles area. In April, 1967, petitioner moved to Utah, where he started a motorcycle business under a Yamaha motorcycle sales franchise. He continued to operate under this franchise with his brothers George and Gary until May, 1968, *171 when he was advised by Yamaha International Corporation ("Yamaha"), the franchiser, that the franchise agreement was to be terminated. Yamaha headquarters are located in Los Angeles. In May, 1968, petitioner returned to California. Since November, 1968, petitioner has worked for various employers in southern California; from 1970 until the present, he has worked primarily for Douglas Aircraft. All of petitioner's 1974 income, except bank interest and his Civil Service Retirement Annuity, came from California employers. During the period from 1968 to the present, petitioner has vigorously challenged his mandatory separation from the FAA and also the termination of his Yamaha franchise, but without success. Petitioner was born in Utah and has a father and six siblings who still live in Utah. He himself owns 96-1/3 acres of land in Utah and an unoccupied house trailer and garage thereon; he spends approximately $500 annually for taxes and upkeep on this property. He holds a Utah drivers license, has one car registered in Utah (a second is registered in California), and continues to vote in Utah, most recently in 1976. He made two trips to Utah in 1974. On their 1974 tax *172 return, petitioners deducted $12,740 as an employee business expense for meals and lodging incurred while away from home. This entire amount represents their living expenses in California, calculated at the rate of $35 per day for 364 days. The Commissioner disallowed the deduction. Petitioners also deducted $2,330 as charitable contributions. The Commissioner now concedes a deduction in the amount of $460, but disputes the remaining $1,870, which represents interest allegedly forgiven on a debt allegedly owed petitioner by the Mormon Church. OPINION The first issue here in dispute is petitioners' claimed deduction for meals and lodging away from home in the pursuit of a trade or business. See section 162(a)(2), I.R.C. 1954. Petitioners base this claim on an allegation that their home was in Utah throughout 1974, and that they were therefore away from home the entire time they spent in California. Even if petitioners otherwise meet the requirements of section 162(a)(2), see Commissioner v. Flowers,326 U.S. 465, it is clear that they were not away from home within the meaning of that section during the time they spent in California. Petitioners lived in *173 California continuously from 1968 through 1974, and petitioners' earnings during that period came entirely from employment in California. Indeed, petitioner Rex Jeppsen's 1974 earned income from California employment was $17,141, a substantial sum which appears to have represented virtually full-time employment. A taxpayer's home for purposes of section 162(a)(2) is not necessarily the place of his domicile or even his family residence, but is his abode in the vicinity of the place of his permanent or indefinite employment. Kroll v. Commissioner,49 T.C. 557, 561-62. We cannot characterize petitioner's employment in California over a period of more than six years as anything less than "permanent or indefinite," and we therefore hold that his tax home for 1974 was not Utah, but California. Although we do not rest our decision on principles of collateral estoppel, as urged by the Commissioner, we note that petitioner raised the same issue with respect to his home in a prior case involving the tax years 1972 and 1973, Jeppsen v. Commissioner,35 T.C.M. 1452, where it was stated (at p. 1453): Petitioner steadfastly contends that, during 1972 and *174 1973, Utah was his "home" and that he was away from home during these years seeking to compel Yamaha to restore his franchise. He maintains that, in order to handle his Yamaha dispute, he was required to spend his time in the Los Angeles area. On this ground, he seeks to deduct $25 per day in 1972 and $35 per day in 1973 for the cost of his meals and lodging. We recognize the earnestness with which petitioner maintains that both FAA and Yamaha have mistreated him, but relevant sections 162(a)(2) and 212 of the tax laws do not provide for the correction of such wrongs, whether real or not, through the allowance of deductions of the type claimed herein. We hold that the same considerations are equally applicable here. The other disputed issue involves petitioner's claim that he made a charitable contribution to the Mormon Church in the form of forgiveness of interest on a debt owed him by the Church. Petitioner appears to allege that officials of the Mormon Church, in collaboration with various Government officials, interfered with certain valuable contract rights of petitioner's, thereby causing petitioner to lose some $75,000 in income during the period 1968 through 1974. *175 Petitioner further alleges that the Church is now, because of its interference, indebted to petitioner in the amount of $75,000, and that petitioner made a charitable contribution to the Church by forgiving interest of 6 percent on that debt in 1974. Section 170(a), I.R.C. 1954, permits a deduction for charitable contributions, subject to certain limitations, and section 170(c) defines charitable contributions as contributions or gifts to or for the use of certain institutions, including churches. Petitioner is not entitled to the claimed deduction, however. In the first place, he has failed to prove that there is any debt owed him by the Mormon Church. Secondly, he has failed to prove that interest was due on such debt, or that he forgave such interest. And even if petitioner had established these crucial facts, his deduction must fail because the alleged contribution is a gift of a right to receive income which would have been ordinary income to petitioner. Cf. Escofil v. Commissioner,464 F.2d 358 (C.A. 3); Rink v. Commissioner,51 T.C. 746, 753; Hutcheson v. Commissioner,17 T.C. 14, 19; section 170(e)(1). Because of *176 concessions, Decision will be entered under Rule 155.