EDWIN TURNER LUMB, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lumb v. Commissioner
Docket No. 8676-73.
United States Tax Court
T.C. Memo 1978-245; 1978 Tax Ct. Memo LEXIS 274; 37 T.C.M. (CCH) 1052; T.C.M. (RIA) 78245; June 29, 1978, Filed; As Amended July 26, 1978 *274 Edwin Turner Lumb, pro se. Willie Fortenberry, Jr., for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax and addition to tax under section 6653(a), I.R.C. 1954, [1] for the calendar years 1970 and 1971 in the amounts as follow: Addition to Tax, Tax Year
I.R.C. 1954, Ended
Deficiency
Sec. 6653(a)
1970
$ 1,510.86
$ 75.54
1971
2,202.42
110.12
The issues for decision are: (1) Whether amounts claimed by petitioner on a Schedule C, filed with his Federal income tax return for each of the years 1970 and 1971, are expenses properly deductible by him or whether they are deductible by a corporation organized by petitioner; (2) whether petitioner is entitled to deduct various itemized amounts claimed for the year 1971 in excess of the $ 650 allowed as a deduction by respondent; and (3) whether respondent properly determined an addition to petitioner's tax for negligence or intentional disregard of the rules and regulations *275 in each of the years 1970 and 1971.
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, an individual who resided in Dania, Florida, at the time of the filing of the petition in this case, filed individual Federal income tax returns for the calendar years 1970 and 1971 with the Internal Revenue Service Center, Chamblee, Georgia. Petitioner formed a corporation which was incorporated under the name of SAFIRE Products, Inc. in the State of Florida on August 19, 1968. The corporation was shown as having 50 shares of authorized stock of which 45 were issued. Petitioner owned one share of the issued stock and each of his two sons, Robin Lumb and Jonathan Lumb, owned 22 shares. At the same time petitioner incorporated SAFIRE Products, Inc. he filed with the Clerk of the Circuit Court of Dade County, Miami, Florida a registration of a fictitious name of SAFIRE Products Company. Petitioner filed privileged tax returns for SAFIRE Products, Inc. with the Secretary of State of Florida for the years 1970 and 1971. On April 17, 1969, petitioner owned a checking account at the Peoples Liberty National Bank, North Miami, Florida in the name *276 of SAFIRE Products, Inc. All funds received by petitioner were deposited in this account during the years here in issue. Most of the funds deposited were sums earned by petitioner from his employment as a merchant seaman. Petitioner used the checking account for the disbursement of funds required by SAFIRE Products, Inc. while it was engaged in the business of manufacturing and also used the checking account for personal expenditures. This account was closed on December 30, 1971. Petitioner's idea in registering a fictitious name and forming a corporation at approximately the same time was that he would develop, operating under the fictitious name, certain machines and if the development was successful he would transfer rights to manufacture those machines to the corporation, SAFIRE Products, Inc. To this end petitioner had a label prepared to place on the machines he was working on. The label was on a silver paper background and was in blue and showed a star with the name SAFIRE Products and the address 829 N.W. 143 St. Miami, Fla. 33168. This was the same address used on the privileged tax returns filed by petitioner for the corporation SAFIRE Products, Inc. *277 Also, petitioner prepared and placed in the Industrial Machine News advertisements for various products. These advertisements were for a turret lathe, a tapping machine, and tooling for a turret lathe. On the turret lathe advertisement there was a box which stated: "BAND SAW WELDER - Ready soon! Enjoy economy of 100' rolls. Write for information." The name that appeared on all of the advertisements was SAFIRE Products Company. Petitioner personally made the patterns for all the machines that were advertised and had castings made for those machines. He made a machine to machine the patterns. Although petitioner paid out some funds to patent attorneys, the machines were not patentable but were developmental machines. Petitioner spent two months of experimentation developing the first machine. Petitioner had a city occupational license as experimental. When the inspector came to check into his work petitioner assured him that he was not selling any of the machines, he was merely developing them, and the inspector okayed him to proceed with his work under an experimental license. Petitioner considered that he was doing this experimentation under the fictitious name SAFIRE Products *278 Company which he used for his individual proprietorship. Of the machines which petitioner worked on developing, the only one that ever sold was the band saw, and that sold in very small quantities, the gross sales price of all the band saws he sold in 1970 being $ 735.50 and, in 1971, $ 159.25 after an adjustment for an allowance. Since petitioner was unable to sell most of his experimental models of the machines he personally made, he never transferred the manufacturing processes for the machinery over to the corporation SAFIRE Products, Inc. and never began a manufacturing process with employees working on manufacturing the products. The few machines sold were all made by petitioner personally in connection with his experimentation on developing machines. The reason petitioner placed all of the funds he received in payment of his work as a merchant seaman in the bank account he had opened under the name SAFIRE Products, Inc. and drew out whatever he expended for personal reasons, as well as in connection with the attempted development of machines, was for convenience. Petitioner was away from Miami for extended periods of time in pursuit of his major occupation as merchant *279 seaman and his son, as treasurer of SAFIRE Products, Inc., could draw checks for needed payments of his personal expenses, including his alimony payments, on the account in the corporate name. Petitioner did not see any reason not to keep the account in this manner for convenience. For each of the years 1969, 1970 and 1971 petitioner filed annual corporation reports and tax returns with the State of Florida, Department of Revenue, at Tallahassee, Florida. On each of these returns petitioner showed himself as president of the corporation, his son, Jonathan, as vice president and his son, Robin, as secretary-treasurer. Robin Lumb was listed as the name of the resident agent. Petitioner and his two sons were shown as the directors of the corporation and in each instance a date was shown for the last meeting of the board of directors, these dates being July 11, 1969, August 20, 1969, and August 20, 1971, on the 1969, 1970 and 1971 returns, respectively. The amount of tax due in each instance was shown as $ 20 and the indication on each return is that this amount was paid. On each of these returns, under the question "Corporation Active?" the answer "yes" appeared. Petitioner *280 filed with his 1970 tax return a Schedule C showing a business or profession as a sole proprietorship and the business name as SAFIRE Products. The employer's identification number shown on this Schedule C for 1970 was the number which had been applied for by the corporation SAFIRE Products, Inc. Neither petitioner nor the corporation during either the year 1970 or 1971 had any employees and petitioner had not obtained an employee identification number for his sole proprietorship's fictitious name SAFIRE Products and for that reason placed the corporation's number on the Schedule C for 1970. On this schedule petitioner reported the following: Gross receipts or
gross sales
$ 735.50
Cost of goods sold
240.00
Gross profit
$ 495.50
Other Business Deductions
Depreciation
$ 1,050.00
Taxes on business and
business property
65.68
Rent on business property
841.69
Legal and professional
fees
1,085.00
Other business expenses
1,574.09
Total
4,616.46
Net Loss
$ 4,120.96
The machinery on which petitioner claimed depreciation consisted of an 8,000 pound turret lathe and two engine lathes, an eight-foot vending brake, a six-foot power shear and *281 a gear shaping machine and a welder which he had acquired personally in 1968 and 1969 at a cost of $ 4,333 and used personally in attempting to develop machines and furniture and fixtures acquired in 1969 of$ 205 which he had personally paid for and used in connection with his attempt to develop machinery. The legal and professional fees claimed on petitioner's Schedule C were part of what he paid to a patent lawyer for filing patent applications in an attempt to obtain some patents for his developments. The other business expenses shown on petitioner's Schedule C consisted of such items as utilities, office supplies, shop supplies, advertising, patent search, services and miscellaneous. Petitioner, as part of his income tax return for 1971, filed a Schedule C "Profit (or Loss) From Business or Profession (Sole Proprietorship)" showing his principal business activity as manufacturing and the product as welders, the name as SAFIRE Products, Inc., with the employer's identification number as that of the corporation. On this return he reported gross receipts of $ 309.75 less returns and allowances of $ 150.50, with net gross receipts of $ 159.25 and a gross profit of $ 159.25. Under *282 other business deductions he reported depreciation of $ 968.47, taxes on business and business property of $ 213.48, rent on business property of $ 823.68, legal and professional fees of $ 1,518, and other business expenses of $ 1,895.52, with total expenses of $ 5,419.15 and a net loss of $ 5,259.90. Depreciation was on the same machinery and equipment on which depreciation was taken for the year 1970. The taxes were explained as corporation tax of $ 85.50, personal property tax of $ 117.09, and sales tax of $ 10.89. The legal and professional fees were amounts paid to a patent attorney and the other business expenses consisted of such items as an occupational license, telephone, electricity, garbage collection, freight, office supplies, shop supplies, maintenance supplies and advertising. Petitioner on his 1971 return claimed as employee business expenses $ 1,900.60. This amount was explained by petitioner as consisting of the following items: 2/16 California disability tax
$ 68.15
2/16 Air fare New York to Miami
78.00
2/16 Taxi - $ 4 and $ 12
16.00
2/16 Baggage transfer
2.00
2/21 Telegram Preslines
3.92
4/23 California tax on vacation pay
17.83
4/23 6 percent Union dues on vacation
pay
106.96
3/29 Theft of machinist tool box
with all precision tools, wrist-
watch, exposure meter, micro-
meters, dial indicator reported
and investigated by Hollywood
police
600.00
3/29 Theft of tape recorder $ 60
and tapes $ 40
100.00
9/27 Union dues, 6 percent of vacation
pay
224.84
10/1 Refund to Maritime Overseas
Corp. They claim they overpaid
me on debarking from S/T Over-
seas Alaska
186.30
Union dues $ 210 and $ 10 and $ 75 and $ 150 and $ 40
485.00
9/15 Baggage and Taxi
11.60
$ 1,900.60
*283 Respondent in his notice of deficiency disallowed in full for each of the years 1970 and 1971 the business loss claimed by petitioner and disallowed $ 1,250.60 of the employee business expenses claimed, giving the following explanation: The losses of $ 4120.96 and $ 5259.90 claimed on Schedule C of your income tax returns for the years 1970 and 1971, respectively, are not allowed because it is determined that these losses are properly that of Safire Products, Inc. Accordingly, your taxable income is increased in the amounts of $ 4120.96 and $ 5259.90 for the respective years. The 1971 employee business expense deductions claimed in the amount of $ 1900.60 are not allowed to the extent of $ 1250.60 because it has not been established that any amount in excess of $ 650.00 was expended for the purpose designated or represented an ordinary and necessary business expense. The $ 650 that respondent allowed represented union dues which respondent determined had been paid by petitioner. OPINION Respondent takes the position that petitioner was doing the developmental work he did on various machines as an unpaid employee of the corporation SAFIRE Products, Inc. and that the sums *284 he was spending in this developmental work were contributions he was making to the capital of the corporation. Respondent contends that these activities amounted to business activities of the corporation and were equivalent to a carrying on of business by the corporation. He argues that the corporate entity of SAFIRE Products, Inc. cannot be ignored, citing Moline Properties, Inc. v. Commissioner,319 U.S. 436, 438-439 (1943), and cases of similar import. If the facts here showed, as respondent contends, that the development of the machines was being done by the corporation rather than by petitioner as an individual, we would agree with respondent that the costs of the development paid on behalf of the corporation could not be deducted by petitioner. SAFIRE Products, Inc. was organized by petitioner for the business purpose of taking over the commercial manufacture of any machines petitioner developed to the commercial stage. Its franchise taxes were paid and it was kept an active corporation. The corporation is a separate entity from petitioner and petitioner is not entitled to deduct any of the corporate expenses which he pays. Such payments would either *285 be loans or contributions to the capital of the corporation. See Koree v. Commissioner,40 T.C. 961, 965 (1963). In this case, however, the facts do not support respondent's position. The facts here show that most of the expenses claimed to be deductible by petitioner as Schedule C business expenses in 1970 and 1971 were expenses incurred by him in his business of developing machines. The record shows that petitioner intended to develop machines as his own development and when the machines had been developed and sufficient sales of experimental models made for the development to have reached a commercial stage to have the corporation take over the manufacture and sale of the machines. He used the same name, except for the incorporated appearing on the corporation name, for his individual proprietorship as the corporate name and this causes confusion. However, in our view the nature of the expenses involved, which respondent does not question aside from his contention that they were corporate expenses, supports petitioner's contention. The depreciation claimed by petitioner was on machinery which petitioner had personally purchased and paid for some of it apparently *286 prior to the incorporation of SAFIRE Products, Inc. and this machinery had not been transferred to the corporation. The legal and professional fees were paid in an effort to obtain patents for petitioner personally on his own developments. The miscellaneous expenses were for items used by petitioner in his development work or, as he stated, in making the experimental models which he "made with my two hands." The record does not show the nature of all the items deducted. However, items such as supplies and equipment were obviously used by petitioner in his sole proprietorship business of developing machines. Although listed as an active corporation on the franchise tax returns filed by petitioner, the corporation was not engaged in any form of business which would require supplies and equipment. The only items on the schedule for either of the years which appear to be corporate expenses rather than petitioner's expenses are taxes and rent. It is clear some of the taxes at least are taxes of the corporation. Since the corporation held directors meetings and had a listed agent at its listed address, it must have used some space. The record is insufficient to show what portion, if *287 any, of taxes and rent was corporate expenses and what portion was petitioner's business expenses. Certainly, petitioner should not have confused his own business and the corporate business in the way he did by using one address and one bank account for both. Also, petitioner should have been more careful in preparing his 1971 return and not used the name of SAFIRE Products, Inc. rather than SAFIRE Products, his registered fictitious name, as the name of his sole proprietor business. However, in our view this record, except for the taxes and rent, shows that the deductions claimed by petitioner on Schedule C of his returns for 1970 and 1971 were in connection with his business of attempting to develop and patent certain machines. On this record we are unable to determine what part, if any, of the deductions petitioner claimed on Schedule C for taxes and rent was business expenses of the corporation rather than of petitioner's individual business. We therefore hold that petitioner is not entitled to deduct any portion of these amounts.However, the fact that petitioner formed a corporation does not deprive him of deducting the expenditures he claimed which we are able to determine *288 were in connection with his individual business. See Ross Glove Company v. Commissioner, 60 T.c./ 569 (1973). From the testimony we gather that the receipts from the sales of the experimental machines were a part of petitioner's personal business. Therefore we hold that petitioner is entitled to $ 3,213.59 of the business loss he claimed on Schedule C of his return for 1970 and $ 4,222.74 of the loss he claimed on Schedule C of his return for 1971. At the trial petitioner produced records to substantiate all of the items claimed on his return as employee business expenses except the claimed theft loss and the $ 186.30 refund to the Maritime Overseas Corporation. Petitioner did establish that he repaid the Maritime Overseas Corporation $ 186.30 for an amount that corporation claimed he had been overpaid, but he failed to establish that this $ 186.30 was included in the wages he reported in 1971 as wages from that corporation. Since it appears that the $ 186.30 was not included in petitioner's reported income, he is not entitled to deduct the refund he made to the corporation for the amount they claimed he was overpaid. We therefore sustain respondent's disallowance of *289 this item for the failure of petitioner to show that it is properly deductible. The $ 700 claimed by petitioner as a theft loss is not in fact a business expense deduction. Petitioner testified that the tape recorder, tape, wristwatch and other items were not a part of his business tools but were items for his personal use. Petitioner clearly showed a theft of the items from his home, that he had no insurance on the items and that they were not recovered. The $ 700 was petitioner's estimate of the replacement cost of the stolen items. At the trial petitioner testified with respect to his estimate of the fair market value of the wristwatch, exposure meter, micrometers, dial indicator, steel rule, scale, a combination square set, the tape recorder and the tapes. On the basis of this testimony, we conclude that the fair market value of the items stolen from petitioner in 1971 totaled approximately $ 250 and since the theft was of personal and not business items this amount must be reduced by $ 100, resulting in an allowable deduction to petitioner for a theft loss of $ 150. On the basis of this record we conclude that petitioner is entitled to deduct as "employee business expenses" *290 in 1971 the amount of $ 1,014.30 and in addition is entitled to a casualty loss deduction of $ 150. The balance of the $ 1,900.60 "employee business expense" deduction claimed by petitioner has not been substantiated.
Petitioner has totally failed to show error in the addition to tax for negligence determined against him by respondent under section 6653(a) for each year. In fact, this record shows that petitioner was careless to the point of negligence in the preparation of his returns. Decision will be entered under Rule 115. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩