GABRIEL AND NATALIE PODLOFSKY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Podlofsky v. Commissioner
Docket No. 4393-78.
United States Tax Court
T.C. Memo 1981-703; 1981 Tax Ct. Memo LEXIS 42; 43 T.C.M. (CCH) 74; T.C.M. (RIA) 81703; December 10, 1981. Murray S. Lubitz, for the petitioners. Bernard S. Mark, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' Federal income tax for the calendar year 1972, in the amount of $ 82,430, and additions to tax, pursuant to section 6651(a), [1] in the amount of $ 4,121.50. [2] Concessions having been made, the only issue remaining for decision is whether the petitioners are entitled to deduct rental expenses incurred for the use of hotel facilities operated by petitioner husband's wholly owned corporation. *43 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided in Atlantic Beach, New York, at the time the petition herein was filed. They filed their joint Federal income tax return for 1972 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. Natalie Podlofsky is a party to this proceeding solely by virtue of having filed a joint income tax return with her husband; consequently, Gabriel Podlofsky will hereinafter be In late 1971 the petitioner, either then residing in In late 1971 the petitioner, eithe then residing in Puerto Rico or planning to move there, became aware of a hotel for rent in St. Croix, Virgin Islands, known as the Estate Carlton hotel (hereinafter the hotel). The hotel was owned by Maidmore Realty Co. (hereinafter Maidmore), whose vice president and general counsel was Robert Maidman (hereinafter Maidman). [3] Petitioner initiated negotiations with Maidmore in late 1971. His attorney, Bernard Samuelson, set certain conditions for the agreement, and the lease was then prepared by Maidman. The lease was for a 10-year term, beginning January 15, 1972. The rent was to increase *44 with time ($ 125,000 for the first year, $ 135,000 for the second year, and so forth, up to $ 225,000 for each of the last two years). Rent was to be paid in equal quarterly installments on the first days of November, February, May, and August of each year of the lease term. Although the lease as originally drafted contained a printed clause requiring Maidmore's written consent to an assignment of the lease, upon the insistence of petitioner's counsel the following clause was typed in: 44. RIGHT TO ASSIGN. Notwithstanding the provisions of Article 4 [nonassignment clause] hereinbefore set forth, Tenant hereunder shall have the right to assign this lease to a corporation to be formed and upon such assignment the Tenant hereunder, Gabriel Podlofsky, shall be released from all personal liability under the terms and provisions of this lease. The lease between Maidmore and petitioner was executed on November 30, 1971. At or about that time petitioner tendered a personal check for $ 35,375 to Maidmore *45 pursuant to a clause in the contract requiring advance payment of the first installment of annual rent for 1972. In January 1972, petitioner formed a corporation in the Virgin Islands known as Estate Carlton, Inc. (hereinafter the corporation). The corporation was formed primarily for the purpose of insulating the petitioner from personal liability. Petitioner remained at all relevant times the sole shareholder and president of the corporation. Also in January 1972, the corporation began to actively operate the hotel. It, inter alia, hired employees, engaged in repairing the premises, advertised, joined a hotel association, and filed income tax returns. On January 20, 1972, Maidman, on behalf of Maidmore, was informed that the petitioner had assigned the lease of the hotel to the corporation. Subsequently, Maidman conformed Maidmore's ledger sheets to reflect the assignment. Furthermore, in written communications, seeking late payments for rent, dated March 7, 1972, September 14, 1972, and February 13, 1973, he addressed the letters to the corporation at its offices in Puerto Rico. All responses to these written communications by Maidman were oral, and at no time was he *46 informed by the petitioner or otherwise that he had addressed these letters to the wrong party. According to Maidmore's ledger accounts, the following payments were made to Maidmore, pursuant to the lease agreement, during 1972: Date
Amount
Payor
3/72
$ 17,687.50
Estate Carlton, Inc.
5/72
35,375.00
Gabriel Podlofsky
9/72
35,375.00
Estate Carlton, Inc.
Additionally, petitioner made contributions to the capital of the corporation in the amounts of $ 10,000, $ 10,000, and $ 35,000, respectively, on June 19, 1972, July 7, 1972, and December 12, 1972. As a result of racial violence, culminating in the deaths of several vacationers in St. Croix in 1973, the corporation's business failed. After discussions with Irving Maidman the petitioner personally prepared an agreement, effectively terminating the lease. It provided: AGREEMENT
This is to confirm our agreement this day, 14th March 1973, re: Estate Carlton Hotel, Inc.
The rent due Maidmore Realty Co is hereby deferred until November 1, 1973 at which time the regular payments shall resume. In addition, commencing February 1, 1974 additional payments of $ 7,500 per quarter will be paid *47 until such time as all back payments are met. Within three months of this date Gabriel Podlofsky President of Estate Carlton, Inc shall notify Irving Maidman and/or Maidmore Realty of its intention to continue or not continue its operation of Estate Carlton Hotel. In the event Podlofsky decides not to remain, he will continue to operate the Hotel for one more month. If the Estate Carlton Inc ceases operation at any time, it will deliver legal possession to Irving Maidman and/or Maidmore Realty Corp. together with all fixture, furnishings and equipment appurtenant thereto with the further proviso that Podlofsky shall be held free and harmless of all liabilities and obligations, both individual and corporate as to Irving Madiman and/or Maidmore Realty Co. Nothing in this agreement shall obligate Irving Maidman or Maidmore Realty to assume and obligations whatsoever of the Estate Carlton Inc. In the event Podlofsky decides to remain and so notifies Maidman, the parties will continue as above. /S/ Gabriel Podlofsky / Estate Carlton, Inc. Gabriel Podlofsky, President /S/ Irving Maidman / Maidmore Realty Co. Irving Madiman In June or July 1973 the corporation vacated the *48 hotel. On August 23, 1973, petitioner signed a printed "surrender of lease," both personally and as a represented of the corporation, which contained the following typewritten clause: [the said party of the second part, by a certain Indenture of Lease bearing date the 30th day of November 1971 did demise and to farm let unto] [4]
GABRIEL PODLOFSKY, all of the premises known as the Estate Carlton Hotel, Fredricksted, St. Croix, U.S.Virgin Islands and more particularly described on Schedule "A" attached hereto and made a part hereof, which said lease was recorded on January 19, 1972 in P.C. 157M, page 374 as No. 177, and Which said lease was assigned by GABRIEL PODLOFSKY to ESTATE CARLTON, INC. by assignment dated January 20, 1972. [Emphasis supplied.] On his tax return for 1972 petitioner deducted $ 125,750 for rents paid to Maidmore on the lease of the hotel in St. Croix. [5] Respondent has disallowed this deduction on the basis that the corporation, not the petitioner, is the entity entitled to claim a deduction for rents paid to Maidmore. *49 OPINION The crux of the matter before the Court is whether petitioner assigned the hotel lease to the corporation in January 1972. The petitioner maintains that he never assigned the lease to the corporation, while respondent adheres to a contrary position. [6] If such an assignment did occur, then, according to the typed provisions in the lease agreement, the petitioner was relieved of all liability under that agreement and only the corporation was liable for rent. It is well established that a shareholder is not entitled to a deduction for the payment of an expense attributable to a corporation; such amounts constitute loans or contributions to capital, and are deductible, if at all, only by the corporation. Deputy v. duPont, 308 U.S. 488 (1940); Rink v. Commissioner, 51 T.C. 746 (1969). Upon our review of all of the objective evidence presented, we conclude that prior to its effective date the petitioner assigned the lease to the corporation. *50 When the petitioner decided to become involved in a hotel venture in St. Croix he consulted at length with his advisors. His attorney stressed the need for limiting personal liability, not only as to hotel operations, through the use of the corporate form, but also apparently as to the hotel lease which carried potential liability of $ 1,770,000. On the other hand, petitioner's accountant suggested that the lease be held by petitioner as an individual to gain the tax benefits. It is apparent that petitioner proceeded to act in a manner by which he sought to accomplish both limited personal liability and tax benefits. In early January 1972, petitioner formed the corporation to operate the hotel. Shortly thereafter he informed Madiman that he had assigned the lease to the corporation. Maidman, [7] acting upon this news, changed the ledgers of Maidmore to reflect the assignment and directed all further correspondence to the corporation. Of the three rent checks for use of the hotel property subsequent to January 1972, two were drawn on the corporation's account and one was drawn on petitioner's own account. The petitioner explained that payments by the corporation were merely *51 the result of petitioner's poor cash flow position at the time, but there is no evidence that the petitioner either repaid (or intended to repay) the corporation these funds. There then being no writing to establish an assignment the petitioner reported all of the rent payments for 1972 as a business expense on his personal tax return. Finally, although the agreement between Maidmore and petitioner, dated March 14, 1973, providing for future termination of the lease, is ambiguous as to the identity of the actual lessee (stating that the corporation will deliver possession of the hotel and that petitioner will be held harmless and signed by petitioner only in his capacity as president of the corporation), their agreement of August 23, 1973, which petitioner executed, both as an individual and as the president of the corporation, clearly stated that the corporation became the assignee of the lease on January 20, 1972. *52 From the facts presented it is not entirely clear whether a pro forma assignment existed, with Maidmore the prospective patsy, [8] whether no such assignment existed, with the Treasury as the prospective patsy, or whether the petitioner had never actually decided until it became clear which result would yield him the greatest benefit. Thus, the petitioner has failed to carry the burden of proof, Welch v. Helvering, 290 U.S. 111 (1973); Rule 142, Tax Court Rules of Practice and Procedure. Moreover, the overwhelming preponderance of the objective evidence weighs in favor of a conclusion that an assignment of the lease from petitioner to the corporation did occur on or before January 20, 1972. Accordingly, we hold that the rent paid to Maidmore for the lease term beginning January 1972 is deductible only by the corporation, and any payments made by petitioner were in fact contributions to the corporation's capital. [9]
*53 Because of concessions, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue. ↩
2. spondent has conceded that this asserted addition to tax was improper.↩
3. Although not entirely clear from the record, it appears that Robert Maidman's father, Irving Maidman, was the president and/or controlling shareholder in Maidmore Realty Co.↩
4. Bracketed portion contains typed and printed words.↩
5. Petitioners arrived at this figure by adding the $ 35,375 paid in December 1971, plus the $ 88,437.50 received by Maidmore in 1972. The sum of these figures, however, is $ 123,812.50. Petitioners have offered no explanation as to why the deduction taken exceeds their asserted entitledment by nearly $ 2,000.↩
6. Petitioner also apparently maintains that the corporation was in fact a "dummy" or "sham" corporation, which should be disregarded for tax purposes. We find this argument entirely without merit. The evidence clearly establishes that the corporation was very actively engaged in the business of operating a resort hotel. It, inter alia, hired employees, repaired the premises, was the member of a hotel association, and filed income tax returns. It was formed for the purpose of shielding petitioner from personal liability. The petitioner has chosen and accepted the business advantages of incorporation. He may not now reject the resulting tax disadvantages. Moline Properties v. Commissioner, 319 U.S. 436 (1943); Harrison Property Management Co. v. United States, 201 Ct. Cl. 77, 475 F.2d 623 (1973); Strong v. Commissioner, 66 T.C. 12 (1976), affd. 553 F.2d 94↩ (2d Cir. 1977).
7. At the time of trial Robert Maidman was a practicing attorney, village justice, and deputy town attorney in Rockland County, New York. His participation in the instant litigation is entirely that of a disinterested witness. For these reasons we place great weight on his testimony herein.↩
8. There is little doubt that had Maidmore held petitioner to the lease contract, the petitioner would have vehemently argued that an assignment had occurred. ↩
9. Although not argued by the parties, the payment of $ 35,375 by petitioner upon signing the lease in 1971 is also a corporate deduction in 1972. No payment could have been deductible until the lease commenced in mid-January 1972. By or before that time, however, the corporation had been formed and the lease assigned (as contemplated at the time the lease was executed). Because the effective date of the first lease payment so closely, if not exactly, coincides with the formation of the corporation, and the assignment of the lease to it, and because petitioner contemplated these events at the time the lease was executed, and payment made, this payment also is deductible only by the corporation and should be considered a contribution by petitioner to the corporation's capital, and we so hold.↩