JOHN J. HYNES, JR. & EILEEN J. HYNES, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hynes v. Comm'r
Docket No. 19841-13.
United States Tax Court
2015 U.S. Tax Ct. LEXIS 55; July 1, 2015, Decided
*55 For Petitioner: Timothy J. Burke, Claudia A. Gould, Burke & Associates, Braintree, MA.
For Respondent: Molly H. Donohue, IRS Office of Chief Counsel, Boston, MA; Janet F. Appel, Office of Chief Counsel-IRS, Boston, MA; Kimberly A. Kazda, Office of Chief Counsel, Dallas, TX; R. Jeffrey Knight, Office of Chief Counsel, IRS, Boston, MA.
David Gustafson, Judge.
David Gustafson
ORDER
Pursuant to the opinion of the Court as set forth in the transcript of the proceedings at Boston, Massachusetts, on June 11, 2015, it is
ORDERED that the Clerk of the Court shall transmit herewith to petitioner and to respondent a copy of the pages of the transcript of the trial in the above case before the undersigned judge at Boston, Massachusetts, containing his oral findings of fact and opinion rendered at the trial session at which the case was heard.
In case issues conceded by the parties require a recomputation of the deficiencies, decision will be entered under Rule 155.
(Signed) David Gustafson
Judge
Dated: Washington, D.C.
July 1, 2015
Bench Opinion by Judge David Gustafson
June 11, 2015
John J. Hynes, Jr. and Eileen J. Hynes. V.
Commissioner
Docket No. 19841-13
THE COURT: The Court has decided to render the following as its *56 oral Findings of Fact and Opinion in this case. This Bench Opinion is made pursuant to the authority granted by Section 7459(b) of the Internal Revenue Code (26 U.S.C.), and Tax Court Rule 152; and it shall not be relied on as precedent in any other case.
By a notice of deficiency dated May 30, 2013 (Ex. 1-J), the Internal Revenue Service ("IRS") determined a deficiency in the federal income tax of Petitioners John J. Hynes and Eileen J. Hynes for the years 2008 and 2009, plus failure-to-timely-file additions to tax and accuracy-related penalties. After various concessions by the parties, the issues for us to decide are: (1) whether Mr. Hynes is entitled to certain deductions claimed on Schedules C and E (we hold that he is not), (2) if not, whether he is entitled to reduce Schedule C income by any amount (we hold that he is not), and (3) whether petitioners are liable for the additions to tax and penalties (we hold that they are liable).
Trial of this case was conducted on June 9 and 10, 2015, in Boston. Petitioners were represented by Timothy J. Burke; and respondent, the Commissioner of the IRS, was represented by Kimberly A. Kazda.
FINDINGS OF FACTTamiami mortgage interest
Mr. Hynes has been in the hospitality and real estate development businesses *57 for 35 years. In 2008 and 2009, one of the entities he owned--11222 Tamiami LLC--owed Faneuil Investors Group a mortgage debt for property it had purchased and on which debt interest was paid. Applying the burden of proof principles discussed below, we are unable to find that Mr. Hynes (through the LLC) paid mortgage interest in amounts greater than the Commission has conceded.
Apart from the absence of documentation, this deduction is made further problematic by Mr. Hynes' testimony that Tamiami's interest was paid from the checkbook of his motel entity Irish Village Holdings ("IV Holdings"). Mr. Hynes can deduct only expenses that he paid (or that his pass-through entity Tamiami LLC paid). If IV Holdings paid it, then it is not deductible by Mr. Hynes, and the payment constitutes a constructive dividend (i.e., taxable income, not a deduction) to Mr. Hynes. But we need not find our way out of this thicket, since simple lack of substantiation resolves this issue.
Mr. Hynes's motel properties and entities
In 1986 Mr. Hynes acquired an ownership interest in "Irish Village", a motel-restaurant combination that he managed. The motel was operated by a grantor trust, Irish Village Trust ("IV *58 Trust"), whose beneficiaries were those who owned interests in the motel. IV Trust collected the motel income, paid its expenses, and paid over net income to the owner-beneficiaries (including Mr. Hynes).
Mr. Hynes put his interest in Irish Village into IV Holdings, a corporation that he owned, so that IV Trust then paid his share of the net income of the motel to IV Holdings. Over time Mr. Hynes bought the interests of other owners, also putting ownership of those interests in IV Holdings; and within a few years he had acquired a 100 percent interest, all of which was held by IV Holdings.
Mr. Hynes acquired three other, smaller motels, which were also held by IV Holdings. By the time of the years in suit, IV Holdings was a subsidiary of a subchapter C corporation called Irish Village Development Corporation ("IVDC"), of which Mr. Hynes was the sole shareholder. (It is unclear when and why this structure was set up.)
Management fees
After Mr. Hynes had acquired 100-percent ownership of Irish Village, he continued to receive management fees as compensation. Mr. Hynes contends that he received no such income; but applying the burden-of-proof principles set out below in part I, we find that *59 he received $325,000 in 2008 and $395,000 in 2009--the amounts that he reported as "management fees" on Schedule C to his tax returns (Ex. 2-J at 5; Ex. 3-J at 5) and that IV Holdings deducted as "management fee" on its tax returns (Ex. 15-J at 9; Ex. 16-J at 9).
Motel expenses
The main motel ("Irish Village") had its own checkbook from which the expenses of that motel were paid, and its own bookkeeper. IV Holdings (its effective owner) had its own separate checkbook and bookkeeper, and the expenses of the three smaller motels were paid from that IV Holdings checkbook. (However, it appears that expenses of the main motel were sometimes paid out of the IV Holdings checkbook, and that expenses of the three smaller motels were sometimes paid out of the motel checkbook.)
Some of the motel-related expenses that were paid out of the IV Holdings checkbook (some stipulated and some not) are relevant here because, as we explain below, they were claimed as deductions on petitioners' individual income tax returns. Since, as we hold below, they are not deductible by petitioners in any event, we need not determine the specific amounts of these nondeductible expenditures. They appear as Items D, E, F, L, and M on the Form *60 4549B in the notice of deficiency (Ex. 1-J at 8), and they consist of: repairs and maintenance in 2008 and 2009 (Stip. 15); legal and professional services in 2008 (Stip. 17); mortgage interest in 2008; other expenses in 2009; and insurance in 2009 (Stip. 21).
Prior years' returns and "no-change" examinations
IVDC and IV Holdings did not file timely income tax returns for 2005, 2006, and 2007 (nor, apparently, for prior years). The IRS commenced an examination of their tax liability, which prompted the companies to file their returns for 2005 and 2006 on July 21, 2008, and to file their return for 2007 on March 23, 2009. (See Ex. 21-J at 18, 64, 108. The returns were filed under the name "Irish Village Development Corp & Subsidiary"). Without doing any rigorous audit, the IRS evidently reviewed the returns for math errors and obvious errors, and on October 14, 2008 (about 2-1/2 months after receiving the 2005 and 2006 returns) issued a closing letter that stated: "We've completed the review of the examination of your tax return for the year(s) shown above [i.e., 2005 and 2006, and prior years]. We made no changes to your reported tax." (Ex. 21-J at 1.) Similarly, no later than August 24, 2009 (see Ex. 21-J at 121), 5 months *61 after the 2007 return was filed, the IRS closed the 2007 year without making any changes to IVDC's reported tax.
Petitioners did not file timely personal income tax returns for 2005, 2006, or 2007. The IRS commenced an examination of their tax liability, which prompted petitioners to file their returns for all three years on June 30, 2009. Without doing any rigorous audit, the IRS evidently reviewed the returns for math errors and obvious errors, and on August 13, 2009 (about 6 weeks after receiving the returns) issued a closing letter that stated: "We're pleased to tell you that we examined your return and didn't propose any changes." (Ex. 20-J at 1.)
Suit-year IVDC returns
A CPA prepared 2008 and 2009 returns for IV Trust, which are not in our record, and prepared 2008 and 2009 returns for IVDC and IV Holdings (Exs. 15-J, 16-J.) To do so, he used information that Mr. Hynes provided and did not examine backup documentation. The CPA did not know that the deductions reported on the returns he prepared did not include expenses paid out of the IV Holdings checkbook that were instead deducted on Mr. Hynes personal return. The CPA included deductions for management fees in the amounts that Mr. Hynes *62 gave him orally and via email.
Mr. Hynes signed the 2008 and 2009 IVDC returns on December 19, 2014 (i.e., more than a year after filing this suit); and the IRS received the returns on January 6, 2015.
Suit-year personal tax returns
Petitioners obtained 6-month extensions of time, past April 15, to file their 2008 return by October 15, 2009, and to file their 2009 return by October 15, 2010. (Stip. 4, 6.) However, they did not file their 2008 return until October 1, 2010, and did not file their 2009 return until September 26, 2011.
On Schedule Cs attached to those late returns, Mr. Hynes reported management fee income of $325,000 in 2008 and $395,000 in 2009. (Ex. 2-J at 5; Ex. 3-J at 5.) From that Schedule C income, he deducted motel-related expenses paid out of the IV Holdings checkbook, which we discussed above--i.e., repairs and maintenance; legal and professional services; mortgage interest; other expenses; and insurance. (Immediately before trial, respondent moved for leave to amend his answer to plead that additional Schedule C expenses claimed by Mr. Hynes were likewise motel-related expenses paid by IV Holdings, that those expenses should be disallowed, and that we should hold petitioners *63 liable for a deficiency greater than that stated in the notice of deficiency; but we denied that motion as untimely.)
The personal returns were prepared by a CPA (not the same CPA who prepared the corporate and trust returns). He did not testify, and the record does not include correspondence between him and Mr. Hynes. Mr. Hynes did not prove whether he gave to the preparer any information other than what appears on the face of the returns, and, in particular, did not prove that the preparer knew that the deductions claimed on the personal Schedule C were motel-related expenses that had been paid not by Mr. Hynes but by IV Holdings.
Examination
The IRS examined certain items on the returns, disallowed certain deductions, and issued the notice of deficiency on May 30, 2013 (Ex. 1-J; Stip. 2.) Petitioners timely filed their petition on August 26, 2013. At that time, they resided in Massachusetts. (Stip 1.)
OPINIONI. Burden of proof
As a general rule, the IRS's determination is presumed correct, and the taxpayer bears the burden to prove any adjustment to the income the IRS determined. SeeRule 142(a). The taxpayers must satisfy the specific requirements for any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Furthermore, *64 taxpayers are required to maintain records sufficient to substantiate their claimed deductions. See Sec. 6001; 26 C.F.R. Sec. 1.6001-1(a).
II. Schedule E mortgage interest
The IRS acknowledged that Mr. Hynes's LLC borrowed money and paid deductible interest, but it concluded that Mr. Hynes's documentation substantiated less than he claimed, and we agree. Petitioners point to no documentation admitted into evidence that corroborates the disputed amounts. They called a witness associated with the lender who, again, confirmed the existence of the loans (but not the total amounts of interest paid); and this witness testified that the records of the company could show the total interest that was paid; but petitioners did not offer those records into evidence. In the absence of documents to corroborate the amounts claimed on the returns, we cannot say that petitioners substantiated their Schedule E interest deductions above what the Commissioner has conceded.
III. Schedule C deductions
Section 162 allows "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." There are three reasons that the disputed Schedule C deductions are not deductible by petitioners:
First, *65 to be deductible by the taxpayer, the expense must, of course, have been paid by the taxpayer. The disputed expenses were paid not by the petitioners but by IV Holdings.
Second, to prove entitlement to deduct an expense, the taxpayer must prove not only the fact of the expenditure but also the business purpose. The taxpayer must show that there was a proximate relationship between the expense and the business. Walliser v. Commissioner, 72 T.C. 433, 437 (1979). But of course, "[b]usiness expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business", 26 C.F.R. sec. 1.162-1(a) (emphasis added), not someone else's business. The disputed deductions relate to the motels' operations, not to Mr. Hynes' business of management. If, despite every other consideration, these items were proper on the Schedule C as the expenses of his business, then Mr. Hynes would have to realize, as constructive dividends (i.e., as taxable income), IV Holdings' payments of his expenses.
Third, when a taxpayer pays the ordinary and necessary expenses not of his own business but of the business of a Subchapter C corporation that he owns, that payment is not a deductible "ordinary" expense but rather *66 a capital expenditure. See Koree v. Commissioner, 40 T.C. 961 (1963).
Petitioners seem to argue that even if the deductions would not otherwise be proper for Mr. Hynes' Schedule C, they should be allowed because the IRS approved or condoned this treatment in its examination of the prior years. If this is their argument, then it fails both as a matter of fact (i.e., the evidence does not show that the IRS knew and approved of Mr. Hynes's deduction on the Schedule C for his management business, of expenses incurred and paid by IV Holdings) and as a matter of law (i.e., the IRS is not bound, by its treatment of an item in a prior audit, to allow the taxpayer the same treatment on a subsequent year's return). See Charlson v. Commissioner, T.C. Memo. 2001-52 ("Respondent is not bound * * * to allow the same treatment in a subsequent year, even where similar erroneously reported items were unchallenged in an audit of a prior year"; citing cases).
III. Management fees
Mr. Hynes signed his personal returns under penalty of perjury (Exs. 2-J at 2, 3-J at 2), reporting his receipt of management fees. Mr. Hynes specifically instructed IVDC's return preparer to claim a deduction for management fees paid to himself, and Mr. Hynes signed those returns under penalty of perjury (Exs. 15-J at 1, 16-J at 1)--and did *67 so while this very dispute was pending. He now contradicts that reporting by contending that the fees were fictitious. He goes further and argues that the IRS agent had an affirmative duty to confirm or correct petitioners' reporting of the management fees income and suggests that her failure to do so supports petitioners' position. This argument begs the question (by assuming that a rigorous examination would have shown the fees to be fictitious) and attempts to flip the burden of proof.
It was Mr. Hynes, not the Commissioner, who had the burden to prove his nonreceipt of income from IV Holdings, but he offered nothing but his own say-so to carry that burden. For example, he did not undertake to prove that he could cover his living expenses without the management fees. He did not offer statements of his personal bank account and show that his deposits are otherwise accounted for; rather, he argued that he had no personal account--a circumstance that is not absolutely impossible but that is unusual. His explanation prompts an obvious question--Did he pay all of his expenses in cash?--for which he did not provide an answer. If he had no bank account, was he using IV Holdings as his personal *68 bank account, thus giving himself constructive dividends?
We are not persuaded of his nonreceipt of the management fees, and we do not disturb the reporting of this issue on his return and IVDC's returns.
Petitioners seem to make the further argument that even if the management fees would not otherwise be removed from his Schedule C, those fees should be removed at least to the extent of the disallowed Schedule C expenses, since (petitioners argue) the IV Holdings' income and expenses should go together. If this is their argument, then it fails. The disputed deductions are expenses of IV Holdings' motel business, and the management fees are another expense of IV Holdings' motel business. The fees show up as income on Mr. Hynes's return because they are his compensation for managing the motels. There is no logical reason that Mr. Hynes need not recognize his compensation as income simply because he is not entitled to deduct IV Holdings' other expenses. Every IV Holdings' employee reports as income the wages he receives from IV Holdings (and IV Holdings deducts those wages), without regard to whether he can deduct IV Holdings's motel expenses on his personal return. It would be nonsense *69 to suggest that an employee is exempt from tax on his wages simply because he is barred from deducting motel expenses that were incurred and paid by IV Holdings.
IV. Addition to tax
Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return. The Commissioner has the burden of production to show that petitioners are liable for the addition to tax determined against them in the notice of deficiency, see Section 7491(c), but petitioners stipulated that they failed to file their 2008 and 2009 returns timely. (Stip. 3-6.) The addition applies "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". Sec 6651(a)(1). Petitioners made no express contention of reasonable cause for their untimely filings, and we see no grounds for such a contention. Petitioners are liable for the addition to tax.
V. Accuracy-related penalty
Section 6662 imposes an "accuracy-related penalty" of 20 percent of the portion of the underpayment of tax that is attributable to the taxpayer's negligence or disregard of rules or regulations or that is attributable to any substantial understatement of income tax. The understatements that we sustain are "substantial" under Section 6662(d)--i.e., they *70 exceed both $5,000 and 10 percent of the tax that should have been reported. We therefore need not reach the issue of negligence. The Commissioner has carried his burden of production (see sec. 7491(c)) to show that petitioners are liable for the penalty.
However, under section 6664(c)(1), a taxpayer who is otherwise liable for the accuracy-related penalty may avoid the liability if he can show, first, "that there was a reasonable cause" for the underpayment and, second, that he "acted in good faith with respect to" the underpayment, then no accuracy-related penalty "shall be imposed". Whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including his efforts to assess his proper tax liability, his knowledge and experience, and the extent to which he relied on the advice of a tax professional. 26 C.F.R. Sec. 1.6664-4(b)(1). "Reliance on * * * professional advice or other facts, however, constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." Id. Petitioners contend that, for their Schedule C reporting position, they relied on the advice of a professional--i.e., the CPA who prepared their returns--and *71 that this fact supports a "reasonable cause" defense.
The Court's caselaw sets forth the following three requirements for a taxpayer to use reliance on a tax professional to avoid liability for a Section 6662(a) penalty: "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Petitioners failed to show the second and third of those elements. Mr. Hynes's very general testimony is the only basis for an argument to this effect; but even clear testimony on this point by Mr. Hynes, without any corroboration, documentary or testimonial, would probably not have carried the day. In any event, such clear testimony was lacking. When he was questioned by the Court on this specific subject, it was not clear that Mr. Hynes even alleges that the CPA actually knew the critical facts--i.e., that he claimed on Schedule C expenses that had been incurred and paid by IV Holdings and not by himself.
Petitioners also argue that they had "reasonable cause" for their Schedule C reporting position because the IRS had approved *72 or condoned it in its examination of their previous returns. But as we said in Part III above, the evidence simply does not show that the IRS knew and approved of Mr. Hynes's deducting, on the Schedule C for his management business, expenses that were incurred and paid by IV Holdings. Their exam evidently focused on the face of the return and little else.
CONCLUSION
The IRS's disallowance of the disputed deductions is sustained. Petitioners' attempt to remove management fees from the Schedule C income is not sustained. Petitioners are liable for the addition to tax and the penalty.
This concludes the Court's oral Findings of Fact and Opinion in this case.
(Whereupon, at 10:31 a.m., above-entitled matter was concluded.)